Nathan ROBINSON, Plaintiff,

v.

Mr. TURNER, Associate Warden, Gene Finley, Unit Manager, Larry Davis, Case Manager, Mr. Ritmer, Lieutenant, Vic Manor, Staff Representative, Mr. Welch, Lieutenant, Gary Huss, Unit Manager, John Doe, Captain, Mr. Lash, Physicians Assistant, Mr. Reardon, Disciplinary Hearing Officer, Mr. Broomerkel, Case Manager, Mr. Woods, Guard, Mr. Kraftan, Guard, Mr. Atteberry, Guard, Defendants.

No. TH90–91–C–T/H.

United States District Court,
S.D. Indiana,
Terre Haute Division.

Feb. 6, 1995.

John R. Davis, Madison, WI, for plaintiff.

Thomas E. Kieper, Asst. U.S. Atty., Office of the U.S. Atty., Indianapolis, IN, for defendant.

## ENTRY DISCUSSING DEFENDANTS' MOTIONS TO DISMISS AND DIRECTING SUPPLEMENTAL BRIEFING

TINDER, District Judge.

### I. INTRODUCTION

This matter comes before the court on remand from the Seventh Circuit Court of Appeals. The question on remand is whether Plaintiff, Nathan Robinson, effectuated service of process upon Defendants pursuant to the Indiana Rules of Trial Procedure. After much consideration of the briefs and exhibits submitted by the parties, the court has decided that supplemental briefing and exhibits are necessary on certain issues. Those issues relate to the apparent or implied authority of the penitentiary mail room person-

nel to receive personal mail and the day-to-day procedures of the penitentiary mail room.

## II. BACKGROUND FACTS AND PROCEDURAL HISTORY

This case poses the dilemma often faced by a prison inmate who wishes to sue his guards. In an extreme case, the practical necessities of service of process may be an insurmountable obstacle precluding a prisoner from obtaining his day in court. The problem is that after a prisoner initiates a lawsuit, he may be required to serve a copy of the summons and the complaint upon the guards pursuant to the Federal Rules of Civil Procedure.[1] It is unlikely that he will be able to direct service to the guards' residences because the guards would be foolish to give a prisoner their home addresses. Unlike the frequently observed exchange between drivers at auto collisions, guards and inmates don't trade addresses and personal data after altercations. Often the prisoner will not be able to effectuate service of process on the person individually, nor would such an outcome be desirable. In fact, after many prison incidents, the involved inmates are transferred to other institutions. Consequently, in many cases, hand delivery of process would be impossible. Moreover, the prison atmosphere could be substantially disrupted by inmates personally serving summonses on guards on prison grounds. Therefore, the only alternative left for the inmate is to direct certified mail service on the guards at their place of employment. However, the guards may assert, as they do in this case, that they cannot receive certified mail at the prison. If the law condones such a position, it would effectively insulate prison guards from suits by prisoners and leave prisoners without access to a court of law.

The facts in this case are as follows. Plaintiff was a prisoner in the United States Penitentiary at Terre Haute. He alleges the guards refused to protect him from an assault by another inmate and failed to provide adequate medical care following the assault. Subsequently, he was transferred to a different federal institution. After the transfer, Plaintiff filed the instant suit in federal court against the thirteen guards who purportedly failed to give him adequate protection and/or medical care.

Plaintiff attempted service of process by certified mail at Defendants' place of employment,[2] the Terre Haute Penitentiary. The receipts (green cards) for the certified mail were signed by a Penitentiary mail room clerk on ten of the mailings. These receipts were returned and filed with this court's clerk. Two were not signed at all. None of the receipts were signed by the individual Defendants, nor did any of the Defendants return the enclosed Notice and Acknowledgment Form. Nonetheless, from the Defendants' responses to interrogatories, it is evident that all Defendants eventually received notice of this lawsuit.

The court initially granted Defendants' Motion to Dismiss for improper service of process under federal law.[3] Plaintiff appealed and stated that he actually attempted service under Indiana law not federal law. Thus, the Seventh Circuit remanded the case to determine if service was accomplished under Indiana law. Specifically, the Seventh Circuit stated that the court should address the following two issues:

First, whether prison mail room employees are authorized to accept service for another prison employee; and second, if these employees are authorized to accept service, whether, in the context of the prison environment, receipt by another can be said to be adequate notice [pursuant to Indiana

1. "May be" is a significant qualification, for such a litigant, like any other, may request the court's assistance in this task. FED R.CIV.P. 4(c)(2). Since the Plaintiff here did not seek such assistance, that avenue will not be addressed.

2. As will be later explained, some defendants no longer worked at the Terre Haute Penitentiary at the time service was attempted. Accordingly, contrary to plaintiff's belief the Terre Haute Peni-

tentiary was not the place of employment of all of the defendants plaintiff attempted to serve.

3. It is clear that service was not adequate under federal law. Former Federal Rule 4(c)(2)(c)(ii) requires the Notice and Acknowledgement to be returned. *See Tso v. Delaney*, 969 F.2d 373 (7th Cir.1992). This form was not returned by any of the Defendants.

Trial Rule 4.15(F) and the Due Process clause of the 14th Amendment].

*Robinson v. Turner,* 15 F.3d 82, 86 (7th Cir.1994). The court will address each of these issues in turn.

## III. MOTION TO DISMISS STANDARD

Defendants filed a motion to dismiss under Rule 12(b)(5) and 12(b)(2) for insufficiency of service of process and lack of personal jurisdiction. Rule 12(b)(5) provides for dismissal because of failure of service of process. Rule 12(b)(2) provides dismissal for lack of personal jurisdiction. These motions are interrelated and often used interchangeably in this context. *See* CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE Civil 2d § 1351 & § 1353 (West 1990). Some courts do not make a distinction between the two motions because where there has been insufficient service of process, the court does not have personal jurisdiction over the individual. *Rabiolo v. Weinstein,* 357 F.2d 167, 168 (7th Cir.1966), *cert. denied,* 391 U.S. 923, 88 S.Ct. 1816, 20 L.Ed.2d 659 (1968); *Young v. Internal Revenue Service,* 596 F.Supp. 141 (N.D.Ind.1984); *Overhauser v. Fowler,* 549 N.E.2d 71, 73 (Ind.Ct.App. 1990); *Smith v. Tisdal,* 484 N.E.2d 42 (Ind. Ct.App.1985).

In order to withstand a motion to dismiss under either of these Rules, the party on behalf of whom service is attempted bears the burden of proving its validity. *Saez Rivera v. Nissan Mfg. Co.,* 788 F.2d 819, 821 (1st Cir.1986). Motions to dismiss are to be granted sparingly so parties are not denied the chance to have their substantive claims heard. *Huelsman v. Civic Center Corp.,* 873 F.2d 1171 (8th Cir.1989).

---

4. Specifically, Defendants Crafton (spelled in the caption and certified mail as "Krafton"), Woods and Atterbury (spelled in the caption and certified mail as "Atteberry"). Plaintiff's service agent alleges that she received and lost the green card for Defendant Atterbury. Although she did not turn the green card in to the clerk's office, she did report a number as the certification number. However, even if reporting a certification number would be sufficient for service of process, Defendant Atterbury was not properly served because he was no longer at the Terre

## IV. DISCUSSION

Plaintiff attempted service pursuant to Fed.R.Civ.P. 4(c)(2)(C)(i) and Indiana Rule 4.1(A)(1). Rule 4.1(A)(1) states:

Service may be made upon an individual . . . by:

(1) sending a copy of the summons and complaint by registered or certified mail or other public means by which a written acknowledgement of receipt may be requested and obtained to his residence, place of business or employment with return receipt requested and returned showing receipt of the letter;

IND.TR.R. 4.1(A)(1) (1993). Plaintiff sent a copy of the summons and complaint by certified mail to Defendants' place of employment. He received receipts signed by the mail room clerk for most of the Defendants. Therefore, Plaintiff assumed he had properly served those Defendants. As for the Defendants for which no receipt was received,[4] the burden was on the Plaintiff to re-serve them. *Overhauser,* 549 N.E.2d at 73. Because Plaintiff did not attempt to re-serve those Defendants, service of process was never completed and they are dismissed from the lawsuit.

On remand, the Seventh Circuit asks the court to address whether a mail room employee is authorized to receive service of process in the form of certified mail for other prison employees and, if so, whether that method satisfies due process requirements that the process be reasonably calculated to inform the individual.[5]

### 1. Receipt of Service of Process by Mail Room Employee

On the face of the Indiana Trial Rule, it appears that the remaining Defendants were properly served because they were

---

Haute Penitentiary when service was attempted. *See infra* note 17 and accompanying text. Thus, service of process was not accomplished on him anyway.

5. This is the standard required by the Due Process Clause of the Constitution and also by Rule 4.15(F) of the Indiana Rules. In order to be adequate under both bodies of law, the service must be reasonably calculated to inform a defendant of the existence of a lawsuit.

served by certified mail at their place of employment. However, the Indiana Supreme Court recognized an additional requirement for effective service of process if the process is received by anyone other than the defendant. *LaPalme v. Romero*, 621 N.E.2d 1102, 1106 (Ind.1993). Pursuant to Rule 4.16(B), a person accepting service for another must have the authority to do so in order to be required to ensure delivery.[6] *Id.* Therefore, whether Plaintiff adequately served Defendants depends on whether mail room employees have the authority to accept registered service of process for Defendants.[7]

Defendants argue that mail room employees are not agents of Defendants because Defendants never made them their agents. Furthermore, Defendants argue that *La-Palme*, 621 N.E.2d 1102, already decided that service on an employer is insufficient service. Finally, Defendants point to the Bureau of Prisons Mail Management Manual that states that employees should not receive personal mail at work to show that service was inadequate.

Plaintiff responds that *LaPalme*, 621 N.E.2d 1102, is not dispositive because that decision dealt with copy service as opposed to mail service.[8] In addition, Plaintiff states that the mail room employees were authorized to sign for certified mail and that the Bureau policy has no practical relevance because mail room employees cannot differentiate between personal certified mail and official certified mail.

First, although *LaPalme* is relevant to determining whether service was adequate, it is certainly not dispositive. The plaintiff in *La-Palme* attempted to serve the defendant by copy service at work. Copy service is serving the individual by personally delivering a copy of the summons and complaint, as opposed to sending the summons and complaint through registered or certified mail. Copy service at the individual's place of employment is not expressly permitted under the Indiana Trial Rules. On the other hand, mail service at the individual's place of employment is explicitly authorized by the trial rules. IND.T.R. 4.1(A)(1). Therefore, *La-Palme* is not dispositive of the case at bar because Plaintiff attempted mail service at Defendants' place of employment. Plaintiff complied with the requirements of the trial rules.

Under *LaPalme*, the relevant inquiry is whether the mail room employees were authorized to receive service of process for prison employees. If the mail room employees were authorized to sign for service of process, then Plaintiff adequately served Defendants because then the mail room employees would be under a duty to promptly deliver the papers to that person. Without authorization to receive the certified mail, courts cannot be assured that the certified mail would be delivered. There must be a reasonable degree of certainty that the particular method of service will get to the defendant so that the method will be reasonably calculated to inform the defendant of the suit as required by the United States Constitution and the Indiana Trial Rules.

6. There is a recent Indiana case that suggests this is not even necessary. In *Precision Erecting, Inc. v. Wokurka*, 638 N.E.2d 472, 474 (Ind.Ct. App.1994), the court of appeals held that service of process as to a corporation complied with the trial rule where the wife of the agent of the corporation signed the certified mail receipt. The court did not even consider whether the wife was authorized to receive service. Instead the court simply noted that in order to comply with the statute, certified mail must be sent to the proper person; it is irrelevant who signs for the certified mail. The reason for the apparent inconsistency could be that *LaPalme* was discussing copy service whereas *Precision Erecting* dealt with mail service. The distinction between copy service and mail service is discussed *infra* note 8 and accompanying text.

7. The Defendants for whom a green card was received can be divided into three groups. The first group was served by certified mail at Terre Haute Penitentiary and received a copy of the summons and complaint. The second group was served at the Terre Haute Penitentiary and received notice of the lawsuit, though not a copy of the summons and complaint. The third group no longer worked at the Terre Haute Penitentiary when service was attempted. The effect on each of the three groups is discussed at the end of this section.

8. In addition, Plaintiff points to language in the dissent that states: "[t]here is no question that under the rule had a letter comporting with the rule been sent to LaPalme's place of business, it would have been adequate." *LaPalme*, 621 N.E.2d at 1106 (Givan, J., dissent).

Although the individual Defendants did not sign written authorization designating the mail room employees as their agents, authorization may still exist. Authorization to receive certified mail service for another does not require compliance with Indiana Rule 4.7, Summons: Service Upon Agent Named by Statute or Agreement. That rule is relevant if one is attempting to serve an agent. In this case, Plaintiff was not attempting to serve agents of the individuals, he was serving the individuals themselves. He never asserted that the mail room employees were the agents of the other employees by statute or agreement. Therefore, Defendants' reliance on cases such as *Hardy v. Maldonado*, 632 N.E.2d 381 (Ind.Ct.App.1994), and *Poteet v. Bethke*, 507 N.E.2d 652, 654 (Ind.Ct.App. 1987), is misplaced. Those case deal with attempted service on an agent of a defendant by copy service.

■ It is clear that service through certified mail can be adequate service of process under the Indiana Trial Rules even if the person who signs the receipt is not the individual to whom the mailing was certified. *Precision Erecting, Inc. v. Wokurka*, 638 N.E.2d 472, 474 (Ind.Ct.App.1994); *Buck v. P.J.T.*, 394 N.E.2d 935, 937 (Ind.Ct.App. 1980). In both *Precision Erecting* and *Buck*, someone other than the person named in the service of process signed the receipt and in both cases the courts held that service of process was adequate. The rules do not require the named individual or an agent to sign the receipt.[9] Therefore, Defendants' argument that personal service was not completed because the individual Defendants did not sign the receipts is without merit. Yet as *LaPalme*, 621 N.E.2d 1102, makes clear, the person signing the receipt must be authorized to do so in order for service of the person who signs the receipt to be obligated to ensure delivery pursuant to Rule 4.16(B) of the Indiana Trial Rules.

The Bureau of Prisons gives the mail room employees actual authority to receive and sign for certified official mail.

> Official certified mail will not be intermingled with inmate certified mail. The mail officer will maintain a log to record delivery to staff, obtaining the signature of staff at the time of delivery. If a "Return Receipt" (green card) has been attached, the mail officer shall sign the card as recipient.

Federal Bureau of Prisons Mail Management Manual ("Mail Manual") § 408(1) (1987). This section clearly authorizes, in fact mandates, mail room employees to sign for, and receive, certified mail addressed to individuals. Thus, for official staff mail, the mail room employee has the authority to receive mail for the individual employees.

Official mail is defined in one section of the Mail Manual as mail bearing the official indicia. Mail Manual § 104. The insignia is defined as: "the printed marking substituted on federal mail ... for stamps or cancellations." Mail Manual § 202. The indicia allows the sender to mail correspondence without paying postage. However, it is not clear if this is the exclusive definition of official mail. Further briefing on this issue is necessary. For example, is a letter from a federal agency official mail even if it is not in an envelope bearing the insignia? Would a letter from a state court to a guard qualify as official mail?

The next inquiry is what is the effect, if any, if the certified mail is for the individual in his personal capacity rather than his official capacity. Defendants state that the mail room employees do not have the authority to receive personal mail because the individual Defendants never gave written authorization for such. However, Defendants never gave written authorization for mail room employees to sign for their official certified mail, and mail room employees clearly have that authority.

---

9. These cases, and the case at bar, are distinguishable from the cases cited by Defendants for the proposition that the person who receives service for another must be designated his agent. *See LaPalme*, 621 N.E.2d 1102, *Overhauser v. Fowler*, 549 N.E.2d 71 (Ind.Ct.App.1990); *Shockley v. Williamson*, 594 N.E.2d 814, 816 n. 3 (Ind.Ct.App.1992) (copy service on insurance company not service on defendant); *Poteet v. Bethke*, 507 N.E.2d 652, 654 (Ind.Ct.App.1987) (copy service on insurance company not service for defendant). The cases cited by Defendants dealt with copy service. In those cases, plaintiffs failed to comply with the service of process rule. In this case, Plaintiff did all that was necessary pursuant to the Indiana Trial Rule 4.1(a)(1).

Even without explicit authorization, the mail room employees may have implicit or apparent authority to receive certified mail for employees.[10] Further briefing is necessary on the issues of mail room personnel practice. If, from further briefing, it becomes clear that mail room personnel cannot distinguish between personal certified mail and official certified mail and that the mail room employees accept personal mail for guards, apparent authority exists for the mail room personnel to sign for certified mail.

Unless mail room personnel simply reject any personal mail, practical considerations dictate that mail room employees must, at the very least, have apparent authority to sign for personal certified mail.[11] Otherwise, prison employees would have to be called from their duties throughout the prison to the mail room whenever certified mail arrived (or the postman would have to be allowed to roam the prison grounds). Such alternatives would be most disruptive to an orderly prison operation.

■ Defendants argue that apparent authority only exists if the principal in some way leads the third party to believe that the agent has authority for his actions. *Pepkowski v. Life of Ind. Ins. Co.*, 535 N.E.2d 1164 (Ind.1989). That is the test for whether an agent can bind his principal to a contract, which is not the issue here. The mail room employees would only be agents for the limited purpose of receiving mail. This authority derives from the Bureau of Prisons, not the individual employees. Furthermore, "[p]lacing the agent in a position to perform acts . . . which appear reasonable to a third party is sufficient manifestation to endow the agent with apparent authority." *Warner v. Riddell*

*Nat'l Bank*, 482 N.E.2d 772, 775 (Ind.Ct.App. 1985). This may be the case here. The postal carrier is not allowed into the prison itself to deliver mail to addressees. Instead, the carrier must take all mail to the mail room. If the mail room employees sign for all incoming mail it is reasonable for the postal carrier to assume that the employees have the authority to do so.

If apparent authority is found to exist based upon the practices of the mail room, the existence of the apparent authority is not negated by the Bureau of Prison's policy that employees should not receive personal mail at work in most circumstances.[12] Mail Manual § 105. First of all, this is simply a policy—it is a recommendation, not a prohibition. Second, the policy is directed at the individual employees, it is not directed at the mail room personnel or the U.S. Postal Service or persons who might send mail. It instructs members of the prison staff not to have their personal mail sent to the prison; it does not forbid mail room personnel from accepting personal mail.

The court now turns to the effect Plaintiff's service of process had on each of the three groups of Defendants:[13] first, those who were served by certified mail at the Terre Haute Penitentiary and received a copy of the summons and complaint, second, the individual who was served by certified mail at the Terre Haute Penitentiary and received notice of the lawsuit but not a copy of the summons and complaint, and third, those who no longer worked at the Terre Haute Penitentiary when service was attempted. First, if the mail room personnel have apparent or implied authority, service was accomplished pursuant to the statute for Defen-

---

10. Defendants did not take affirmative steps to negate this authority in any way. Their failure to do so could be seen as ratification of the authority or waiver of their objection to the authority. *See Yahn Electric Co. v. H.K. Baer*, 148 W.Va. 527, 531, 135 S.E.2d 687 (1964). The waiver arises from Defendants receiving the benefit of receiving mail at work. *Id.* Waiver is not based on counsel for Defendants entering an appearance in this lawsuit as Plaintiff asserts. *See Lewellen v. Morley*, 909 F.2d 1073, 1077 (7th Cir.1990) (the filing of an appearance does not relieve the plaintiff from executing proper service on defendants).

11. Defendants Turner and Welch both stated that they had received certified mail at work on prior occasions. It is not clear from the briefs whether that mail was personal or official.

12. Staff can have personal mail forwarded to the prison for 45 days following transfer. Mail Manual § 105.

13. *See supra* note 4 and accompanying text, the court does not have jurisdiction over Defendants for which no receipt was received.

dants Davis, Huss, Finley, Brodmerkel,[14] and Manor. They were all served by certified mail at their place of employment. A return receipt was received for each of them. They all received a copy of the summons and complaint and thus notice of the lawsuit.

■ Second, service of process probably was not adequate for Defendant Reimer. His certified mail was addressed to "Lieutenant Ritmer." This appears to be an example of misnomer. In cases of misnomer, the plaintiff must show that even though the name was incorrect, the correct party was served. *Montgomery v. Polk Milk Co.*, 79 N.E.2d 108, 110–11 (Ind.App.1948); *see also Newey v. Newey*, 215 Ill.App.3d 993, 159 Ill.Dec. 468, 475, 576 N.E.2d 137, 144 (1991). Reimer never received the summons and complaint in this case—thus he never received service of process. In his initial brief, Plaintiff did not sustain his burden of showing that service of process was adequate in spite of the misspelling. However, he now has the opportunity to show that this failure of delivery of the certified mail was the result of the mail room personnel's actions, not the misspelling. Moreover, in order for Plaintiff to show that the mail room personnel had a duty to ensure delivery of the certified mail, he must show that they could have known who Plaintiff intended to serve. "Reimer" and "Ritmer" are not so similar that it would be obvious that this was simply a misspelling.[15] Plaintiff did not offer any evidence on this point. Plaintiff could show, for example, that Reimer was the only guard with a name beginning with "R" and ending in "mer," or that he was one of only a few lieutenants. Similarly, he could show that a reading of the complaint and the factual allegations regarding "Ritmer" would have given Reimer clear notice that he was "Ritmer." Furthermore, it is not clear from the briefs how Reimer

received notice of the lawsuit. This information is also relevant to the issue of the adequacy of Reimer's service of process.[16]

■ Third, service of process was not accomplished under the Indiana Trial Rules for Defendants Rardin (spelled in the caption and certified mail as "Reardon"), Turner, Welch or Lash.[17] None of the Defendants worked at the Terre Haute Penitentiary when served. The Rule provides for service of process by registered or certified mail at the Defendant's place of employment. IND. TR.R. 4.1(A)(1). This failure to serve Defendants at their place of employment constituted a complete failure of service of process rather than a technical failure of service of process. *Overhauser*, 549 N.E.2d at 73. A complete failure of service of process cannot be cured by Indiana Rule 4.15(F) which provides that defective service is effective if it complies with due process requirements. As Plaintiff did not serve Defendants at their place of employment, the mail clerks did not have the authority to sign the receipt for certified mail. Plaintiff attempts to show that service was cured under Rule 4.15(F) by relying on *Storm v. Mills*, 556 N.E.2d 965 (Ind.Ct.App.1990) (finding service on defendant at his former business establishment constituted adequate notice where plaintiff reasonably believed defendant still ran business there). It is not clear who signed for the certified mail in *Storm*, but to the extent that that person was not authorized to do so, *Storm* has been limited by the recent Indiana Supreme Court holding of *LaPalme*, 621 N.E.2d at 1106. In *LaPalme*, the court clearly stated that a person accepting service of process for another must have the authority to do so. Furthermore, *Storm* involved facts very different from the case at bar. In *Storm*, it was reasonable for the plaintiff to believe that the defendant still worked at

---

**14.** Plaintiff actually misspelled the Defendant's name as Broomerkel, however, he still received his copy of the summons and complaint.

**15.** Unlike Broomerkel and Brodmerkel which ordinarily would be pronounced similarly and are more similar in appearance.

**16.** Defendant Broomerkel was actually named as "Brodmerkel," (*see supra* note 15) however, both that the pronunciation of these names is similar

and the fact that he received his summons and complaint show that the misspelling was not a hindrance to service of process in his case.

**17.** Service of process was never accomplished for John Doe, Captain. Plaintiff never attempted to serve him once Plaintiff determined his real name. The mail clerks did not have a duty to determine which Captain Plaintiff was attempting to serve.

that location because she saw him there on several occasions. *Storm*, 556 N.E.2d at 966. Plaintiff asserts no such facts in this case. The burden to show that the attempted service was adequate or cured rests with the Plaintiff and he has not carried that burden in this case.

### 2. Due Process Requirements

The second consideration is whether allowing the mail room employees to sign for service of process for other prison employees complies with constitutional Due Process.[18] U.S. CONST. amend. XIV, § 1. The Due Process Clause requires an individual to have adequate notice of the lawsuit before a court will have personal jurisdiction over him. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314–15, 70 S.Ct. 652, 657–58, 94 L.Ed. 865 (1950). The test for determining whether service of process complies with the Due Process Clause is whether the service of process was "reasonably calculated to inform" the defendant of the lawsuit. *Wuchter v. Pizzutti*, 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446 (1928).

Service of process by certified mail with the receipt signed by a mail room clerk is reasonably calculated to inform a defendant of a lawsuit. Pursuant to the Bureau of Prisons Mail Management Manual there is clear procedure to ensure certified mail gets to the intended recipient. The Manual requires the mail clerk to log in the certified mail and obtain the signature of the staff person who retrieves it from the mail room. Mail Manual §§ 209 & 408. The staff person should then deliver the letter to the named individual. This procedure is an effective means to ensure service of process.

Furthermore, under Indiana Trial Rule 4.16(B), the person accepting service for another person is under a duty to facilitate service of process. The Rule requires the person who accepts service to:

(1) promptly deliver the papers to that person;

(2) promptly notify that person that he holds the papers for him; or

(3) within a reasonable time, in writing, notify the clerk or person making the service that he has been unable to make such delivery of notice when such is the case.

IND.TR.R. 4.16(B) (1993). This rule requires the mail room employees to make efforts to ensure service of process is accomplished. These duties are clear and if complied with would facilitate service of process on defendants. If the mail room employees had followed the procedure they are required to follow under the Mail Management Manual, or fulfilled their duties under the Indiana Trial Rules, service would have been completed. These duties make this method of service of process reasonably calculated to inform defendants of a lawsuit.

Actual knowledge is not determinative of whether service of process was reasonably calculated to inform a defendant of a lawsuit. *Wuchter*, 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446 (1928). An individual may lack actual knowledge of a lawsuit yet still be subject to the court's jurisdiction. *Id.* However, actual knowledge is evidence that service was reasonably calculated to inform a defendant. *Glennar Mercury–Lincoln, Inc. v. Riley*, 338 N.E.2d 670 (Ind.Ct.App.1975). In this case, all thirteen Defendants had actual knowledge of the lawsuit. These Defendants received this knowledge even without the mail room employees fulfilling their duties under the Mail Manual or the Indiana Rules. Had the mail room personnel fulfilled either of these duties it is even more apparent that Defendants would have reasonably received notice of the lawsuit. Therefore, the court finds that service by certified mail signed by a mail room employee is reasonably calculated to inform defendants about lawsuits and thus satisfies due process requirements.

The court notes that if such service of process were not allowed, it would be almost impossible for inmates to execute service on prison employees. It appears that federal service of process rules do not permit service by certified mail at Defendants' place of em-

---

**18.** Generally, certified mail service at work is constitutional. *Valdez v. Ford, Bacon & Davis,* *Texas, Inc.*, 62 F.R.D. 7, 14 (N.D.Ind.1974).

ployment. *See Lewellen v. Morley*, 875 F.2d 118, 119 (7th Cir.1989). Inmates will probably not know employees' home addresses [19] and such information would be almost impossible for an inmate to obtain, thus making service at their home almost impossible. The Bureau of Prisons has procedures in place to ensure that certified mail gets to the named individual. Although there may be more effective ways to ensure service on defendants, they are often not options in cases of this kind. *See Sellers v. United States*, 902 F.2d 598, 602 (7th Cir.1990).

## V. CONCLUSION

Several of the Defendants have established that service of process was inadequate as to them. Therefore, Defendants Crafton, Woods, Atterbury, Welch, Turner, Rardin, Doe, and Lash's Motion to Dismiss will be **GRANTED** pursuant to Rules 12(b)(2) and 12(b)(5).

The record is inadequate for a complete consideration of the effectiveness of Plaintiff's service of process upon Defendants Davis, Huss, Finley, Brodmerkel, Reimer, and Manor. Further briefing is required in the areas of implied or apparent authority of the mail room personnel and the day-to-day operations of the mail room. Specifically, the court directs the parties to address the following issues:

1. Do mail room personnel generally receive personal mail for guards? Or, on the other hand, do they always refuse such mail?

2. Was the certified mail that Defendants Turner and Welch received at the penitentiary personal or official certified mail?

3. Is franked mail the only official mail? For example, what if mail was sent to a guard from a state court, or another federal agency?

4. Is there a way for mail room employees to distinguish between personal certified mail and official certified mail?

Plaintiff will also be given the opportunity to further address the adequacy of the attempted service of process upon Lieutenant Reimer. Because the bulk of the information requested is within Defendants' possession, they will supply the first brief. Defendants's submission and brief is due 30 days from the date of this entry. Plaintiff will be given 15 days to respond. In Plaintiff's response, he may address the adequacy of the attempted service of process upon Lieutenant Reimer. Defendants will then have 7 days to file a reply brief. Plaintiff will have another 7 days to reply solely on the issues surrounding attempted service of process upon Defendant Reimer.

ALL OF WHICH IS ORDERED.

---

**19.** And probably *should not* know these addresses.