**DUNDEE CEMENT COMPANY,**
Plaintiff-Appellee,

v.

**HOWARD PIPE & CONCRETE
PRODUCTS, INC., et al.,**
Defendants-Appellants.

No. 82–2015.

United States Court of Appeals,
Seventh Circuit.

Submitted Oct. 26, 1983.*

Decided Nov. 15, 1983.

Judgment Amended Nov. 30, 1983.

Rehearing Denied Dec. 2, 1983.

* On October 30, 1982, appellee filed a suggestion for affirmance without oral argument. Appellants were ordered on November 3, 1982, to file a response to this suggestion by November 15, 1982. No response was filed. On December 13, 1982, notice was sent to the parties providing that either might file a "Statement as to Need of Oral Argument." See Rule 34(a), Fed. R.App.P.; Circuit Rule 14(f). No such statement having been filed, the appeal has been submitted on the briefs and record.

Charles A. Marshall, Jr., Chicago, Ill., for defendants-appellants.

Donald C. Clark, Jr., Catherine A. Sazdanoff, Isham, Lincoln & Beale, Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, WOOD and POSNER, Circuit Judges.

CUMMINGS, Chief Judge.

On February 16, 1982, plaintiff-appellee Dundee Cement Company filed a diversity suit against defendants Howard Pipe & Concrete Products, Inc., Howard National Corporation, John Karras, Chairman of the Board of Directors of Howard Pipe and President of Howard National, John Iverson, an officer of Howard Pipe, James Karras, Susan Behmer, and Joseph Sabon. Dundee sought to recover money due and

owing it for shipments of cement sold and delivered to Howard Pipe.

Dundee's complaint contained four counts. Count I charged that Howard Pipe had failed and refused to pay the balance of its account for goods duly sold and delivered, and sought judgment against Howard Pipe in the sum of $119,160.28.[1]

Count II charged all defendants except Howard National as the makers of checks, issued to Dundee in partial payment of this debt, which were drawn on either closed accounts or accounts with insufficient funds. The allegations identified the maker of each check and specified the date each check was written, the amount of each check, and the bank designated as payor. Dundee sought judgment against Howard Pipe in the amount of $21,474.25, the total amount that Howard Pipe purported to pay with the worthless checks, and judgment against the individual defendants in the amount of each worthless check he or she signed. Liability for the amounts of these checks was claimed to be joint and several. The total sought in Count II was $41,748.50.

Count III charged all defendants except Howard National with fraud in that they knowingly issued worthless checks with the intention of inducing Dundee to refrain from pursuing its rightful remedies for non-payment. Dundee alleged that as a result of its reasonable reliance upon these material and false representations of payment, it lost the use and benefit of money due and owing it from Howard Pipe including "interest thereon, profits from investments, and acquisition of materials and services." Dundee sought judgment against those defendants jointly and severally in the amount of $250,000 as a result of their fraud.

Count IV charged Howard Pipe, Howard National, and John Karras with breach of a guaranty agreement, by the terms of which each such defendant undertook a joint and several obligation to guarantee payment at maturity of any indebtedness of Howard Pipe to Dundee for goods sold or delivered. Dundee sought judgment against these three defendants jointly and severally in the amount of $119,160.28.[2]

On February 22, 1982, defendants Howard Pipe, Howard National, and John Iverson were served with the summons and complaint. These defendants were required to answer or otherwise plead by March 15, 1982. On March 15, 1982, attorney Charles A. Marshall, Jr. filed a general appearance on their behalf and on behalf of John Karras, Joseph Sabon and Susan Behmer but omitting James Karras.[3] No answer or other responsive pleading was filed by that date.

By agreement of the parties, defendants received an extension of time in which to answer; they failed to do so. At a status hearing held on April 5, 1982, the district court granted the defendants who had been served an extension of time in which to answer; again, no answer was filed.

At a status hearing held on April 22, 1982, Dundee presented to the district court a motion for default judgment under Rule 55(b)(2) of the Federal Rules of Civil Procedure against Howard Pipe, Howard National, John Karras, and John Iverson, all four being covered by the general appearance. Defendants' counsel initially failed to appear. The district court indicated it would enter an order of default against these defendants, and requested that Dundee submit a judgment order setting forth the nature of the claims, the exhibits tendered in support, and the aggregate amounts claimed. The court scheduled a status hearing for May 27, 1982, noting that the case was not closed; the requested default judgment was not against all defendants but only against four of the remaining six defendants. At this point in the April 22

---

1. Attached as exhibits and incorporated as part of the complaint were copies of invoices for the cement sold and delivered and a copy of a demand letter sent to John Karras and Howard Pipe.

2. Attached as an exhibit and incorporated as part of the complaint was a copy of the executed guaranty agreement.

3. On March 17, 1982, Dundee filed a notice of dismissal, without prejudice, of Joseph Sabon from this lawsuit.

hearing, defendants' counsel appeared and requested additional time in which to answer.[4] The request was denied because Judge McGarr had "just entered a default" (App. 000054). The judgment order granting default judgment in favor of Dundee and against defendants Howard Pipe, Howard National, John Karras, and John Iverson was entered that same day. The judgment awarded plaintiff the following amounts from Howard Pipe:

$119,160.28 for goods sold and delivered by plaintiff

21,474.25 for nonpayment of twelve checks signed by John Karras, Joseph Sabon, James Karras, Susan Behmer and John Iverson totalling $20,274.25 [5]

250,000.00 for fraudulent issuance of said checks

119,160.28 for failure to pay plaintiff under 1980 guaranty of payment of Howard Pipe's indebtedness to Dundee

Plaintiff was also awarded $119,160.28 from Howard National for failure to pay plaintiff under the same guaranty. Likewise plaintiff was awarded the following amounts from John Karras:

$ 3,474.25 for failure to pay check

250,000.00 for fraudulent issuance of the twelve checks

119,160.28 for failure to pay plaintiff under that guaranty

Finally, plaintiff was awarded the following amounts from John Iverson:

$ 1,200.00 for failure to pay check

250,000.00 for fraudulent issuance of the twelve checks

Of course plaintiff cannot receive reimbursement for more than $119,160.28 (either for cost of goods sold or on the guaranty) plus any damages emanating from fraud.

The amounts of the checks would necessarily be subsumed within the $119,160.28. Any overlapping would be impermissible with respect to the satisfaction of judgment.

At the status hearing of May 27, defendants' counsel presented a "motion to vacate." Counsel claimed he had been "hospitalized" and unable to file an answer. He further claimed the judgment order was vague and ambiguous and suggested that Dundee's exhibits were insufficient to support the judgment. The district court denied the motion to vacate and granted Dundee's oral motion to make the judgment final. On May 28, 1982, the court ordered that the judgment rendered on April 22, 1982 be entered as a final judgment; the court "expressly determined . . . that there [was] no just reason for delay in the entry of this judgment until final determination of all the issues involved" in the case. On June 24, 1982, defendants filed a notice of appeal "from the Order of Judgment entered April 22, 1982 and the Order entered May 27, 1982 denying Defendants Motion to Vacate the Judgment Order."

I.

The judgment order of April 22, 1982 became a final appealable order on May 28, 1982, by virtue of Rule 54(b) of the Federal Rules of Civil Procedure. Defendants' timely notice of appeal therefore has preserved for review the propriety of entry of the default judgment. The grant or denial of a motion for the entry of a default judgment lies within the sound discretion of the trial court and will be reversed only for an abuse of that discretion.[6] With this standard in mind, we turn to defendants'

---

4. In support of this request, counsel offered the following explanation (App. 000054):

I've been in the hospital, and as you may know, they're tearing down our [10 S. La-Salle St.] building. They tore up the carpeting in our office and I can't find the file. The only thing I have of the file is what [Dundee's counsel] sent me.

5. Through mathematical error, the judgment order drafted by plaintiff's counsel seems to award $1,200 more than the total amount of the twelve checks.

6. Defendants also have challenged on appeal the district court's denial of their motion to vacate. Rule 60(b) of the Federal Rules of Civil Procedure is "reserved for extraordinary relief." Inryco, Inc. v. Metropolitan Eng. Co., Inc., 708 F.2d 1225, 1230 (7th Cir.1983). A litigant must show "exceptional circumstances" to justify setting aside a default judgment. Id. Because defendants' timely notice of appeal has preserved for review the underlying judgment, defendants need not satisfy the stricter "exceptional circumstances" standard.

challenges to the default judgment although we would be within our rights in refusing to decide this appeal in view of the paucity of appellants' brief. *Carducci v. Regan*, 714 F.2d 171, 177 (D.C.Cir.1983); Rule 28(a)(4) of the Federal Rules of Appellate Procedure. However, we have not so acted in the past and therefore deem it unfair to do so here without advance notice on our part. But in the future we may well refuse to process an appeal where an appellant's brief is as deficient as this one.

## II.

Although the bases for defendants' attack on the default judgment are not readily ascertainable from their "brief," by reading between the sparse lines, several arguments may be discerned.

Initially, defendants argue that the district court erred in entering the default judgment without proof of the allegations in the complaint. This claim of error need not detain us. As a general rule, a "default judgment establishe[s], as a matter of law, that defendants [are] liable to plaintiff as to each cause of action alleged in the complaint." *Breuer Electric Mfg. Co. v. Toronado Systems of America, Inc.*, 687 F.2d 182, 186 (7th Cir.1982). Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true.

Defendants raise no specific challenge to the allegations of Dundee's complaint; nor can we say that the allegations are not well-pleaded, that they are incapable of proof, or that they are unsupported by or in conflict with the exhibits tendered in support of the claims. We cannot condone defendants' attempt to bolster their argument by misquoting Rule 55(b)(2) of the Federal Rules of Civil Procedure. The rule provides in pertinent part that "[i]f, in order to enable the court to enter judgment or to carry it into effect, it is necessary . . . to establish the truth of any averment by evidence . . . the court *may* conduct" a hearing. The district court did not abuse its discretion in determining that a hearing

on the truth of any allegation relating to liability was unnecessary.

Defendants further argue that the district court erred in awarding "punitive damages" "without proof of harm" to Dundee. The award of $250,000 did not constitute punitive damages; the award was for damages suffered as a result of defendants' fraudulent acts. See Count III of the complaint. The argument defendants are attempting to articulate is that the district court abused its discretion in failing to hold a hearing on the amount of damages suffered as a result of the fraud alleged in Count III.

Although upon default the factual allegations of a complaint relating to liability are taken as true, those allegations relating to the amount of damages suffered are ordinarily not. See *Pope v. United States*, 323 U.S. 1, 65 S.Ct. 16, 89 L.Ed. 3 (1944); *Geddes v. United Financial Group*, 559 F.2d 557 (9th Cir.1977). A judgment by default may not be entered without a hearing on damages unless, as in Counts I, II and IV of this complaint, the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits.[7] *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir.1979); see also *Geddes v. United Financial Group, supra*, 559 F.2d 557; *Eisler v. Stritzler*, 535 F.2d 148 (1st Cir.1976); *Magette v. The Daily Post*, 535 F.2d 856 (3d Cir.1976); *Flaks v. Koegel*, 504 F.2d 702 (2d Cir.1974); 6 Moore's Federal Practice ¶ 55.07 (2d ed. 1983). Apart from the damages sought for fraud in Count III, the district court did not abuse its discretion in determining that a hearing to determine the amount of damages was unnecessary, for the amounts claimed were liquidated.

The damages portion of this judgment under Count III must be remanded for further consideration. First, although additional proof of damages was unnecessary

---

7. Even the clerk of court is empowered to enter a default judgment without a hearing where, as here, except for the fraud damages alleged in Count III, a plaintiff's claim is for a sum certain

or for a sum which by computation can be made certain. Rule 55(b)(1) of the Federal Rules of Civil Procedure.

with respect to the liquidated damages sought in Counts I, II, and IV, Dundee has not adequately supported its claim for $250,000 damages suffered as a result of defendants' fraud that prevented plaintiff "from seeking its appropriate and rightful remedies against" the defendants (App. 000009). A hearing must be held at which Dundee must provide evidence in support of the component damages comprising the total damages of $250,000 alleged in Count III. *Geddes v. United Financial Group, supra,* 559 F.2d at 560.

 Second, defendants were alleged to be jointly and severally liable for the damages claimed in Counts II, III, and IV. Although this Court's decision in *In re Uranium Antitrust Litigation,* 617 F.2d 1248 (7th Cir.1980), made clear that where liability is joint and several, the entry of default judgment against fewer than all defendants in an action is proper, we further held that a damages hearing may not be held until the liability of each defendant has been resolved. The policy underlying that decision was the avoidance of inconsistent damages awards on a single claim involving joint and several liability. As stated in *Uranium,* "[j]ust as the several or independent nature of plaintiff's claim permits different findings as to liability of individual defendants, the joint nature of plaintiff's claim prohibits different findings as to damages against all defendants." 617 F.2d at 1262; see also 6 Moore's Federal Practice ¶ 55.06 (2d ed. 1983).

The difficulty in applying *Uranium* to the present case stems from the fact that this record does not reveal the status of the litigation with respect to the two remaining defendants. James Karras and Susan Behmer were alleged to be jointly and severally liable for the claims stated in Counts II and III of the complaint. Although James Karras was not covered by attorney Marshall's March 15, 1982, appearance and was not served at the time of the April 22, 1982, hearing (App. 000050), he may have subsequently been served, may have answered the complaint, and may be preparing for a trial on the merits. Similarly, Susan Behmer for whom an appearance was filed may also have answered the complaint and be

preparing for trial. See App. 000053–000055.

 On remand, the district court should consider the applicability of this Court's *Uranium* decision to this case. If the court determines the decision has no bearing on this litigation or if plaintiff elects to dismiss its claims against James Karras and Susan Behmer, the court must proceed to hold a hearing on the amount of Count III damages suffered by Dundee as a result of defendants' fraud. Obviously plaintiff will only be entitled to be made whole and cannot obtain more than single damages merely because the defendants are jointly and severally liable.

Judgment vacated and cause remanded for further proceedings consistent herewith.