**Henry H. STAFFORD, Jr.,
Plaintiff–Appellee,**

v.

**Kenneth MESNIK, Defendant–Appellant.**

Nos. 93–3127, 94–3209.

United States Court of Appeals,
Seventh Circuit.

Argued June 9, 1995.

Decided Aug. 24, 1995.

Raymond H. Groble, III, Ginger Mayer (argued), Emery K. Harlan, Bernard Roccanova, Ross & Hardies, Chicago, IL, for plaintiff-appellee.

James A. Graham (argued), Chicago, IL, for defendant-appellant.

Before CUMMINGS, CUDAHY, and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

Henry Stafford, a former salesman for Purofied Down Products, Inc., sued the company, two of its shareholders, and his former supervisor, Kenneth Mesnik, for terminating him and refusing to pay him monies the corporation allegedly owed him. The district court entered a default judgment against Mesnik. We now reverse.

## I.

Brothers Louis and Arthur Puro owned the majority of Purofied, a manufacturer of down products, and acted as officers and directors of the corporation. Stafford began working for Purofied in 1979 as its Regional Manager of Midwest Sales and Special Markets. The corporation paid Stafford a yearly salary and a 1% commission on sales he generated. Stafford initially reported directly to Louis, the then Chairman of the Board. In 1987, Purofied hired Mesnik as Executive Vice President, and Stafford began reporting to him.

On August 2, 1988, Mesnik fired Stafford after Stafford landed a large account with the Home Shopping Network ("HSN"), which Purofied expected to purchase $9 million worth of products that year. Allegedly at the direction of the Puros, Mesnik refused to pay Stafford his 1987 commissions and reimburse his travel expenses, of which the corporation had promised and denied payment all year, unless Stafford signed a release relinquishing his right to commissions on all 1988 and future sales, as well as any other amounts Stafford thought were due him. Stafford declined to sign the release.

On September 30, 1988, Stafford's attorney sent letters to the Puros and Mesnik, requesting payment of all amounts Purofied owed his client. Purofied did not tender payment, whereupon Stafford initiated a lawsuit against Purofied, Louis, and Arthur. Stafford claimed that Purofied had breached his compensation agreement and converted his commissions and that the Puros had violated the Illinois Wage Payment and Collection Act (the "Wage Act"), had tortiously interfered with his compensation agreement, had terminated his employment in bad faith, and had tortiously interfered with his business relationship with Purofied. Purofied filed for bankruptcy in 1990, thereby staying the action against it. Shortly thereafter, on April 6, 1990, Stafford added Mesnik as a defendant on the bad faith termination, Wage Act, and tortious interference claims.

From the beginning, the parties encountered problems conducting discovery. Before Stafford added Mesnik to the suit, Stafford filed a motion to compel the defendants to answer certain interrogatories relating to Stafford's compensation and any contracts originally procured by Stafford that Purofied concluded after his termination. The motion involved Mesnik only to the extent it asked the court to compel the corporation to present Mesnik, then still one of its officers, for a deposition. The court ordered the defendants to comply with these requests in March and May, 1990, which they still had not done over one year later, although Mesnik did submit to a deposition after becoming a defendant.

In November, 1990, Stafford propounded interrogatories and requests for document production to Mesnik and Louis. When the defendants failed to reply within one month, Stafford filed motions to compel and for a default judgment. The court denied these motions but ordered Mesnik and Louis to respond to Stafford's discovery requests by January 30, 1991. They responded—but refused to answer several questions as overly burdensome or not likely to lead to discoverable material. After further disputes over this discovery and the earlier interrogatories, Stafford filed another motion to compel on March 6, 1991. Rather than rule on this motion, the court, on January 31, 1992, ordered the parties to resolve their discovery disputes by holding a local rule 12 conference

within 28 days. The court at the same time ordered the parties to file a final pre-trial order by April 30, 1992.

Counsel for all the individual defendants, Marc Smith, met with Stafford's attorney in February to attempt to settle the discovery conflicts. They did not discuss Mesnik's interrogatories because Mesnik had instructed Smith to cease working on his behalf. Smith subsequently filed a motion to withdraw as Mesnik's counsel, which motion the court granted, over Stafford's objection, on March 29, 1992.

After Smith's withdrawal, Mesnik did not contact Stafford to discuss the discovery requests [1] or participate in the drafting of the pre-trial order. The other parties filed a joint motion to extend the time to file the pre-trial order, which the court granted, giving the parties until June 5, 1992. On May 8, Mesnik, now acting *pro se*, drafted a letter to the court objecting to the Magistrate Judge's April 21 recommendations on the defendants' motion for summary judgment and seeking the appointment of counsel or permission to represent himself. The court did not receive Mesnik's letter until May 28. In the meantime, also on May 8, Stafford filed a motion for default judgment against Mesnik, sending notice to Mesnik in care of Smith. At the hearing on the motion on May 22, Smith appeared on Mesnik's behalf and sought reinstatement as his counsel, to which Stafford did not object. The court nonetheless denied Smith's request, stating: "[t]his is just playing games. . . . A motion for default judgment is entered, and now Mr. Mesnik is asking you to come back in. That's not dealing in good faith or appropriately in my opinion." After noting that Mesnik was not present, the court entered a default against him. Mesnik immediately retained other counsel and moved to vacate the default on

June 8, 1992, a motion the court denied. Later, the court awarded Stafford $255,-618.11 in damages, including 1987 and 1988 commissions, commissions on later sales to HSN, unreimbursed business expenses, final salary, and pre-judgment interest. Mesnik appealed.[2]

## II.

Mesnik asserts that the district court erred by allowing Smith to withdraw as his counsel, by denying Smith's motion to reappear, by entering a default judgment against him, by refusing to vacate that judgment, and by awarding Stafford damages against him before the liability of the other defendants had been established. We conclude that the court should have permitted Smith to reappear and should not have entered a default judgment against Mesnik.

### A.

▆▆▆ Mesnik first contends that the court should not have granted Smith's motion to withdraw and should have allowed Smith to reappear as his attorney. We review a court's grant of a motion to withdraw for an abuse of discretion. *Washington v. Sherwin Real Estate, Inc.*, 694 F.2d 1081, 1087 (7th Cir.1982). The attorney seeking to withdraw must establish that his client consents or that a valid and compelling reason exists for the court to grant the motion over an objection. *Woodall v. Drake Hotel, Inc.*, 913 F.2d 447, 449 (7th Cir.1990).

▆▆▆ Here, Smith informed the court that Mesnik instructed him to do no more work on Mesnik's behalf. At no time did Mesnik object to Smith's motion or argue that he did not know about it. *See Washington*, 694 F.2d at 1088. Mesnik does not dispute that

---

1. Stafford and the Puros did not resolve their discovery disputes. On June 26, 1992, the Magistrate Judge recommended ordering the defendants to respond to Stafford's requests, but in only a limited way. The Magistrate Judge also recommended sanctions against the defendants for their failure to respond fully to the original interrogatories despite the two-year-old order to comply. The district court adopted the Magistrate Judge's recommendations in full on July 23, 1992.

2. The remaining counts against Louis and Arthur Puro went to trial before a Magistrate Judge and jury, who found the Puros liable for compensatory and exemplary damages in excess of $1 million. After Stafford accepted a remittitur on some of the damages, the Puros appealed. We disposed of that appeal in *Stafford v. Puro*, 63 F.3d 1436 (7th Cir.1995).

he told Smith to stop representing him and indeed, his letter to the court confirmed that he had asked Smith to stop efforts in his defense because he did not have the financial resources to pay the attorney. Rather, Mesnik maintains that the court could not simply accept Smith's word for this fact. Contrary to Mesnik's assertions, the court did not abuse its discretion in relying on the statement of an officer of the court.

■ Turning to Smith's abortive re-entry, we have not discovered, and the parties have not given us, any legal authority regarding a court's power to deny an attorney's motion to file an appearance. We will also review such decisions for an abuse of discretion. Litigants can choose their own attorney, and a court should refuse to allow an appearance by qualified counsel only when it would delay the action or in some other way harass the other litigants or court. *Cf. S.E.C. v. Suter,* 732 F.2d 1294, 1302 (7th Cir.1984).

■ In the instant case, the court denied Smith's May 22 appearance because it thought Mesnik was "playing games" and that asking for Smith's reinstatement after being confronted with the motion for default demonstrated bad faith. We cannot agree with such a characterization. Mesnik ended Smith's original representation because he could not afford Smith's services. He subsequently attempted albeit in a less than zealous manner, to represent himself. When confronted with the default motion, he tried to secure counsel again. Apprehension about proceeding alone in the face of a dispositive motion is certainly understandable, even for one who thought he could not afford a lawyer.

Moreover, Mesnik's choice to rehire Smith cannot be impugned. Stafford had sent the motion to Mesnik only through Smith, who he knew no longer represented Mesnik. Since we cannot determine when Smith informed Mesnik of the motion and hearing, we cannot fault Mesnik for failing to find other counsel. Indeed, because Smith already had intimate knowledge of the case, including Mesnik's interests, he constituted a most logical choice. Nothing indicates that Mesnik asked for Smith's withdrawal and reappearance in order to confuse matters, delay the

case, or harass his opponent. Nor can we say that Mesnik's conduct amounted to blatant disregard or disrespect of the court. We therefore conclude that the court abused its discretion in refusing to allow Smith, Mesnik's chosen counsel, to reappear.

■ The transcript of the May 22 hearing implies that the court then entered the default against Mesnik simply because he was not present and not based on the merits of Stafford's motion. We cannot uphold the default, however, if based on the court's previous error in denying Smith's motion to reappear. And, even if the court had appropriately denied Smith's appearance, one missed hearing should rarely form an adequate basis for a default judgment. *See Del Carmen v. Emerson Elec. Co.,* 908 F.2d 158, 163 (7th Cir.1990). Default constituted a particularly harsh sanction here, where Stafford did not object to Smith's reappearance. Certainly, given Stafford's acquiescence, Mesnik reasonably believed the court would allow Smith to represent him and thus was not at fault for not being in the courtroom himself.

In its subsequent order denying Mesnik's motion to vacate, however, the court gave alternative reasons for the default: Mesnik's failure to resolve the discovery disputes and participate in the drafting of the pretrial order. The language of the order, in contrast to the hearing transcript, suggests that the court likely would have entered the default regardless of whether it had allowed Smith to appear. We must therefore evaluate the court's decision to order this sanction in response to Mesnik's conduct.

### B.

Mesnik challenges both the entry of default and the court's subsequent denial of his motion to vacate that decision. Mesnik's notice of appeal specifically mentions the actual entry of judgment against him. In that Stafford has not objected to the timeliness of this aspect of Mesnik's appeal, we address that contention. *See Jones v. Phipps,* 39 F.3d 158, 161–62 (7th Cir.1994).

We will reverse a court's entry of a default judgment only for an abuse of discretion. *Merrill Lynch Mortgage Corp. v. Narayan,* 908 F.2d 246, 250 (7th Cir.1990). We apply the same abuse of discretion standard, but even more deferentially, when reviewing the court's denial of a motion to vacate:

> [I]n reviewing the district court's Rule 60(b) determination, the court can only consider whether the denial of the motion was an abuse of discretion; we cannot reach the merits of the underlying judgment.... This limitation generates a much narrower review than would [be] our review on direct appeal of the underlying order from which relief was sought by the Rule 60(b) motion.

*Lee v. Village of River Forest,* 936 F.2d 976, 979 (7th Cir.1991) (internal quotations and citations omitted); *see also Tolliver v. Northrop Corp.,* 786 F.2d 316 (7th Cir.1986) ("The decision under 60(b) is discretion piled on discretion."). While this circuit no longer disfavors default judgments, *see Metropolitan Life Ins. Co. v. Estate of Cammon,* 929 F.2d 1220, 1224 (7th Cir.1991), and does not require the trial court to first impose less drastic sanctions, *United States v. Di Mucci,* 879 F.2d 1488, 1493 (7th Cir.1989), a default judgment should not be considered a ready response to all litigant misbehavior. We believe that in this case, the actual extent of Mesnik's conduct did not merit the court's drastic sanction.

Regarding discovery conflicts, we first note that the responses the court had compelled two years earlier did not concern Mesnik; at the time of Stafford's original request Mesnik was not a party to the suit and later, when no longer employed by Purofied, he had no access to the data. In eventually granting sanctions for the defendants' failure to comply with this 1990 order, the Magistrate Judge rejected the Puros' assertion that they could not obtain the information because Purofied had filed for bankruptcy. The Magistrate Judge noted that the discovery was due and the first order to comply was entered before the bankruptcy proceeding had begun, a time also before Mesnik's entry into the litigation. Thus, while the court understandably may have been infuriated that this information had not yet been turned over by May 22, it could not reasonably hold Mesnik accountable for the Puros' conduct.

Mesnik complied, albeit imperfectly, with Stafford's discovery requests directed at him personally. Mesnik had, however, legitimate objections to the interrogatories, as demonstrated by the Magistrate Judge's eventual recommendation to grant Stafford's motion to compel in only a limited manner. The court had also directed the parties to discuss their discovery disputes, an order that undoubtedly pertained to Mesnik. The Puros and Stafford met, unsuccessfully, in February. Mesnik had the responsibility to contact Stafford and did not, but Stafford had the same duty and also neglected it. The fact that Mesnik and Stafford never met cannot be considered solely Mesnik's fault, at least not on the record before us, and the fact that the meeting between Stafford and the Puros was not a success renders Mesnik's inactivity somewhat less than critical to the litigation.

The pretrial order, the drafting of which Mesnik had not yet participated in, was not due for another two weeks at the time of the hearing. Although Mesnik should have contacted the other parties prior to May 22, nothing prevented him from still doing so before the June 5 deadline. In his motion to vacate, Mesnik stated that his position was essentially the same as the Puros. The court responded that Mesnik could not simply agree with the Puros' decisions, but instead had to participate actively in the litigation. However, there is no suggestion that the Puros would have objected to Mesnik's strategy and Stafford has not explained how such an agreement would have harmed him or delayed the case. Given these possibilities, especially the time remaining before the order's deadline, we conclude that the court placed undue reliance on Mesnik's lack of participation.

In *Johnson v. Gudmundsson,* 35 F.3d 1104, 1111 (7th Cir.1994), a case with somewhat comparable facts, we affirmed a court's entry of a default judgment on a counterclaim. The sanction had followed the plain-

tiff's failure to meet an extended deadline for filing responses to the counterclaim and the defendant's motion for summary judgment, failure to contact the court about these documents, and failure to participate in the drafting and filing of a pretrial order, as well as the plaintiff's absence at a scheduled hearing. The court also noted that the plaintiff had not responded to numerous communications from defense counsel. The instant case, however, is distinguishable in several significant respects. Mesnik did not miss any deadline for filing necessary motions or orders as in *Gudmundsson* and the many other cases in which we have upheld default judgments. *See Pretzel & Stouffer v. Imperial Adjusters, Inc.*, 28 F.3d 42 (7th Cir.1994) (failure to file an answer or attend a status hearing); *O'Brien v. R.J. O'Brien & Assoc., Inc.*, 998 F.2d 1394 (7th Cir.1993) (failure to file an appearance or answer for seventeen months); *Zuelzke Tool & Eng. Co., Inc. v. Anderson Die Castings, Inc.*, 925 F.2d 226 (7th Cir.1991) (failure to file an answer); *Merrill Lynch*, 908 F.2d 246 (failure to file an answer or any other responsive pleading and failure to attend several status hearings); *Matter of State Exch. Fin. Co.*, 896 F.2d 1104 (7th Cir.1990) (filed answer late); *Tolliver*, 786 F.2d 316 (dismissal for failure to respond at all to interrogatories under threat of default, failure to attend own deposition); *Dundee Cement Co. v. Howard Pipe & Concrete Prod., Inc.*, 722 F.2d 1319 (7th Cir.1983) (failure to file an answer or appear at a status hearing); *Chrysler Credit Corp. v. Macino*, 710 F.2d 363 (7th Cir.1983) (failure to file an answer). Moreover, Mesnik had an acceptable excuse for missing the May 22 hearing—he thought he had retained counsel. Finally, Stafford made no attempt to contact Mesnik directly, but rather met only with Smith and directed his sole correspondence to Mesnik through Mesnik's former attorney. It is not appropriate to allow Stafford to act as if Mesnik no longer mattered and then fault Mesnik for somewhat similar behavior.

While we agree that Mesnik should have personally taken a more active role once Smith withdrew, we cannot conclude that default was a reasonable response to his conduct. The court could not blame Mesnik for the other defendants' discovery delays,

and Mesnik had not yet missed the deadline for filing the pretrial order. He failed to contact Stafford regarding his own discovery, but Stafford also abdicated this responsibility. The other parties' discovery disputes remained unresolved as of the hearing, making it difficult to understand how Mesnik's failure to contact Stafford by itself could warrant the severe sanction of default. *Cf. Lockhart v. Sullivan*, 925 F.2d 214 (7th Cir. 1991) (dismissal for failure to attend own deposition, status hearing, or discovery conference without notifying opposing counsel or court and failure to cooperate with discovery); *Di Mucci*, 879 F.2d 1488 (failure to comply with five court orders to answer discovery and failure to attend own deposition); *Roland v. Salem Contract Carriers, Inc.*, 811 F.2d 1175 (7th Cir.1987) (dismissal for missing several court deadlines including order to fully respond to discovery requests). We believe that this case is distinguishable from the cases cited above, which we affirmed, based on the degree of egregiousness of the relevant misconduct and the fact that in many of them we used the more deferential standard for reviewing a court's denial of a motion to vacate. In light of the actual extent of Mesnik's conduct, we find that the district court abused its discretion in entering a default against him.

## C.

Our decision makes it unnecessary to address the court's denial of Mesnik's motion to vacate or its award of damages, although we note that had we affirmed the default judgment we would have had to reverse the award of damages. Stafford is only entitled to one payment of his salary, commissions, and expenses. As such, the court had to wait to set the amount of damages against Mesnik until the Puros' liability was established. *Dundee Cement*, 722 F.2d at 1323; *In re Uranium Antitrust Litigation*, 617 F.2d 1248, 1262 (7th Cir.1980). Furthermore, while we have found that the court erred in refusing to allow Smith's appearance, our decision does not imply anything regarding Mesnik's future representation. Mesnik currently has other counsel and the case against the Puros is now in an entirely different

procedural posture than it was on May 22, 1992. Smith and Mesnik may no longer choose to be associated, a result entirely consistent with this opinion. Finally, because we have vacated the default judgment, we reverse the court's award of attorney's fees.

For the foregoing reasons, we VACATE the court's entry of a default judgment against Mesnik, REVERSE the award of attorney's fees, and REMAND for further proceedings.