CALUMET LUMBER, INC.,
Plaintiff–Appellee,

v.

MID-AMERICA INDUSTRIAL, INC. and Custom Brick, Inc., et al., Defendants–
Cross–Plaintiffs–Appellees,

and

Rising Sun Baptist Church, Defendant–
Cross–Defendant–Appellant.

Nos. 96–2482, 96–2640.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 6, 1996.

Decided Jan. 8, 1997.

Mitchell Bryan (argued), Levenfeld, Eisenberg, Janger, Glassberg & Samothy, Chicago, IL, Michael Sweig Mendelson, McConnell & Mendelson, Chicago, IL, for Calumet Lumber, Inc.

Peter G. Swan (argued), Emalfarb, Swan & Bain, Highland Park, IL, Martin L. Schwartz, Schwartz & Associates, Chicago, IL, for Rising Sun Baptist Church.

Robert A. Filpi (argued), Paul F. Stack, Stack & Filpi, Chicago, IL, for Mid–America Indust., Inc.

Before BAUER, COFFEY, and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

Rising Sun Baptist Church asks us to set aside the district court's entry of a default judgment in favor of Mid–America Industrial, Inc. We conclude that the district court did not abuse its discretion in entering a default judgment and therefore affirm.

### I.

Rising Sun hired Mid–America in May 1994 to serve as general contractor on a $900,000 project to reconstruct the church building, a "Tudor Gothic-style" edifice that had been damaged by fire earlier in the year, and to erect a new gym facility. Mid–America in turn subcontracted with a variety of suppliers, among them Calumet Lumber and Custom Brick. At some point, the relationship between Rising Sun and Mid–America soured. And that is more than we need to know of the underlying facts, for this litigation has strayed from the merits to a point beyond redemption.

Calumet initiated this diversity action in August 1995 by filing a three-count complaint that asserted claims against Mid–America in Counts I and II for breach of contract and account stated and sought in Count III to foreclose a mechanic's lien on the church property. Count III named as defendants Mid–America, Rising Sun, Custom Brick, and other entities known to have an interest in

the property. On October 24, 1995, Mid–America filed the cross-claim against Rising Sun on which the district court ultimately entered default judgment. Rising Sun answered Calumet's complaint on December 2.

On December 22, fifty-nine days after Mid–America filed its cross-claim, Rising Sun filed motions to dismiss Mid–America's cross-claim and to dismiss Count III of Calumet's complaint. The court denied the motion to dismiss as to Mid–America in a minute order dated January 9. The January 9 order instructed Rising Sun to file an answer to Mid–America's cross claim by January 22 and made no mention of Rising Sun's own "counterclaim" against Mid–America, which the church had attempted to file on December 27 and 28. On January 25, 1996, the court issued a memorandum, opinion and order in which it granted Calumet's motion to amend its complaint, denied Rising Sun's motion to dismiss Calumet's original complaint, and instructed Rising Sun to answer Calumet's first amended complaint by February 8. Although Rising Sun did not answer Mid–America's cross-claim by the court's January 22, 1996 deadline, it did file an answer to Calumet's amended complaint on February 8.

A temporary break in the action occurred when the court dismissed the entire suit for want of prosecution after the parties failed to attend a February 29 conference at which they were to present their joint final pretrial order. Claiming never to have received notice of the February 29 conference, counsel for Mid–America, Calumet and Custom Brick filed motions to vacate the order of dismissal, and at a hearing held on March 14, the court reinstated the action "on the condition that all discovery is completed by 4/15/96" and set a "firm" bench trial date for April 29, 1996. Unopposed to the motions to vacate and engaged on other business, counsel for Rising Sun chose not to attend the March 14 hearing, although he was informed of it in advance.

Twenty-one days passed. On April 4, 1996, still without answer to its cross-claim, Mid–America served Rising Sun with a motion for default judgment. The next day, Rising Sun filed a motion to answer instanter, extend the discovery cut-off, and to continue the trial date or sever for separate trials; attached to this motion was the long-awaited answer. Spurred to action, Rising Sun also filed on April 8, along with its response to Mid–America's motion, its own motion for entry of default judgment on its cross-claim against Mid–America. But it was too late for the district court. In a memorandum, opinion and order dated April 29, 1996, the court granted Mid–America's motions to strike Rising Sun's cross-claim and entered default judgment on Mid–America's cross-claim against Rising Sun in the amount of $117,787.13—a sum that included funds owed by Mid–America to Calumet and Custom Brick under their respective subcontracts. On June 3, the district court denied Rising Sun's motion to vacate the default judgment pursuant to Federal Rules of Civil Procedure 55(c), 59(e) and 60(b). "In sum," the court explained, "Rising Sun offers no excuse for failing to answer the cross-claim by January 22, 1996 as directed by court order." Finally, on June 6, the court entered a judgment of foreclosure and sale, with the proceeds to be distributed among Mid–America, Calumet and Rising Sun.

## II.

In this court, Rising Sun insists that it vigorously litigated this case below and maintains that the entry of default judgment was therefore an abuse of the district court's discretion. Rising Sun also argues that the district court erred in denying its motion to dismiss Count III of Calumet's complaint and in permitting Calumet to amend its allegations. We discuss these contentions in order.

### A.

▪ Relief from entry of default judgment is governed by Federal Rule of Civil Procedure 60(b). Fed.R.Civ.P. 55(c); *see Connecticut National Mortgage Co. v. Brandstatter*, 897 F.2d 883, 884 (7th Cir. 1990). On this record, the only ground that Rising Sun could present to the district court for vacating its default judgment was "excusable neglect" under Rule 60(b)(1). Excusable neglect, we have explained, requires a showing that "the actions leading to the default were not willful, careless, or negligent."

*Johnson v. Gudmundsson,* 35 F.3d 1104, 1117 (7th Cir.1994) (citing *C.K.S. Engineers, Inc. v. White Mountain Gypsum Co.,* 726 F.2d 1202, 1206 (7th Cir.1984)) (internal quotations omitted). Our review of the district court's refusal to vacate its entry of default judgment is limited to a determination of whether the court abused its discretion. Moreover, we have noted that the scope of our review of a district court's Rule 60(b) determination is especially narrow: "the [reviewing] court can only consider whether the denial of the motion was an abuse of discretion; we cannot reach the merits of the underlying judgment...." *Stafford v. Mesnik,* 63 F.3d 1445, 1450 (7th Cir.1995) (citing *Lee v. Village of River Forest,* 936 F.2d 976, 979 (7th Cir.1991)). This restrictive approach has much to recommend it where, as here, the district court has given a party the chance to explain its conduct both prior to the entry of default judgment and again upon consideration of a motion to vacate.[1]

■ Rising Sun acknowledges that its burden is weighty, but points to several actions on its part that, alone or in combination, should have been sufficient to forestall default despite its failure to abide by the district court's January 9 order requiring it to file an answer to Mid–America's cross-claim by January 22. Because this failure lies at the heart of the court's decision to enter default judgment, Rising Sun expends considerable effort arguing that the district court improperly denied its December 22 motion to dismiss on the merits. The bulk of this argument is wasted energy, however, because, contrary to Rising Sun's assumption, the district court denied the December 22 motion as untimely.[2] Regardless of the district court's reasons for denial, its January 9 order put Rising Sun on notice that the court expected an answer by January 22. Having refused to heed the district court's clear command, Rising Sun may not avoid responsibility at this late juncture by attempting to relitigate the merits of a Rule 12(b)(6) motion.

■ Rising Sun also refers us to the "counterclaim" that it attempted to file against Mid–America in late December 1995. On December 27, Rising Sun did file a cross-claim against Mid–America, but neither the certificate of service nor the notice of filing was signed. On December 28, Rising Sun again submitted the cross-claim to the court along with a signed certificate of service and notice of filing. This second submission, however, was stamped "Received" rather than "Filed" and was never made part of the official court record. Counsel for Calumet and Mid–America claimed never to have received the cross-claim. In granting Mid–America's motions for entry of default judgment and to strike Rising Sun's cross-claim, the district court explained that Rising Sun's argument that its cross-claim put Mid–America on notice of Rising Sun's factual defenses rested on "two faulty premises": that the cross-claim was properly served and that the cross-claim was properly filed. The court noted that it was undisputed that Rising Sun had not even attempted to serve Custom Brick, thus violating Rule 5(a)'s requirement that pleadings be served on all parties. In addition, the court offered several possible

---

1. *Brandstatter* exemplifies the more problematic case in which a court enters a judgment of default before affording the defaulting party an opportunity to account for its conduct. In *Brandstatter,* we observed that by denying the defendant "an opportunity to argue that a default judgment should not be entered," the district judge placed upon the defendant "the heavier burden of showing that a judgment already entered should be set aside." 897 F.2d at 885. Because the judge had precluded any consideration of the defendant's motion for leave to file an untimely answer and thereby "disabled herself from exercising the broad discretion that the civil rules give her," we remanded to be certain that the judge would have denied the defendant's motion had she known of it prior to entering

default judgment. *Id.* Here, by contrast, the court, in considering Mid–America's motion for entry of default judgment, had before it not only Rising Sun's motion for leave to file an answer instanter but also Rising Sun's response to Mid–America's motion. Rising Sun thus had an opportunity to explain its dilatory conduct prior to the court's entry of default.

2. Although the district court's January 9 order did not offer a reason for the court's dismissal of Rising Sun's motion to dismiss Mid–America's cross-claim, the court later explained in its June 3 opinion that "Rising Sun's December 22, 1995 motion to dismiss the October 24, 1995 cross-claim was untimely."

reasons why the December 28 crossclaim had not been filed, among them, the fact that Rising Sun had not sought leave of the court to file the untimely cross-claim and the fact that Rising Sun did not identify the December 28 certificate of service as a correction to the unsigned certificate of the previous day. Rising Sun now takes issue with this analysis by arguing that its December 22 motion to dismiss extended its time for filing the cross-claim under Rule 12(a)(4) and by attempting to collapse the December 27 and December 28 submissions into a single, proper filing. Of course, neither of these contentions answers the district court's observations that the cross-claim was never properly served on all parties or that Rising Sun made no effort to connect the December 28 filing with the previous day's version. More to the point: while Rising Sun's protestations before this court might be viewed as a testament to the misapprehensions that guided its behavior in December 1995, they do not explain Rising Sun's failure to obey the district court's January 9 order. That order, after all, followed the unsuccessful attempt to file the cross-claim, and put Rising Sun on notice that the court expected an answer.

■ Rising Sun's last excuse is difficult to accept. As it did in the district court, Rising Sun represents that it assumed that the court's February dismissal of the action for want of prosecution, later vacated, restarted the time for filing an answer. Because the court reinstated the action at the March 14 hearing that counsel for Rising Sun did not attend, and because counsel learned of the order reinstating the action on March 20 when the order was docketed, Rising Sun calculates that its time to file an answer should have been measured from March 20. Counsel allegedly held this belief as a result of two district court precedents from other circuits: *John v. Sotheby's Inc.*, 141 F.R.D. 29 (S.D.N.Y.1992) and *Kleckner v. Glover Trucking Corp.*, 103 F.R.D. 553 (M.D.Pa. 1984).

This explanation strains credulity for several reasons. First and most important, it cannot begin to account for Rising Sun's failure to file an answer by January 22—that is, unless we assume that in January 1995,

counsel anticipated that in late February the court would dismiss the action and then reinstate it in March. Cassandra herself was not so prophetic. If Rising Sun's answer had not been several weeks late already when the district court dismissed the action, this explanation might ring less hollow. Second, counsel's focus upon the March 20 docketing date, rather than the March 14 hearing date, is not well taken. Counsel admits that he knew of the hearing in advance and was not opposed to the motion to reinstate the suit, but chose not to attend the hearing. Yet Rising Sun's answer did not materialize until twenty-two days after March 14, and then only after Mid–America moved for default judgment. Finally, we are distressed by counsel's supposed reliance on the two district court opinions. We agree with the district court that neither case is apposite, either factually or legally, but our concern is deeper. Even more disturbing is the fact that both cases, in which district courts applied standards not applicable in this circuit and declined to enter default judgments, contain language disapproving of counsels' dilatory conduct. *See John*, 141 F.R.D. at 36 ("[B]y failing to file a timely answer, Sotheby's counsel has acted in an imprudent and careless fashion."); *Kleckner*, 103 F.R.D. at 556 ("We stress that if we thought we had discretion to do so we would under the egregious facts in this case deny Glover's motion for leave to file its answer out of time."). Rather than demonstrating "excusable neglect," reliance on these cases suggests a conscious attempt to test the limits of the district court's patience. That the court proved less forbearing than counsel hoped is not a ground for setting aside a default judgment.

■ Rising Sun's last effort to salvage its case is to ask that we perform a sort of proportionality review. All in all, they protest, "we were not as dilatory as others." Contrary to its assertion, however, Rising Sun's counsel's conduct fell within the range where the district court had discretion to enter a judgment of default. In *Stafford*, a case in which we held that the district court had abused its discretion, we distinguished the defaulting party's conduct from the behavior involved in cases upholding default

judgments. *See* 63 F.3d at 1451 (collecting cases). Typical of the cases in which we had upheld default judgments was a failure by counsel to file an answer and to attend hearings. *Id.* This case can be added to the list.

"We have long since moved away from the position of disfavoring default judgments, and we are therefore increasingly reluctant to set them aside." *Pretzel & Stouffer v. Imperial Adjusters,* 28 F.3d 42, 47 (7th Cir. 1994). We are confident that district courts will not wield this tool as a blunt instrument with which to bludgeon every sloppy lawyer. Entry of default judgment is a serious penalty, one that may punish the client for the sins of counsel, and we remain sensitive to claims that a court has acted reflexively in imposing the sanction. This, however, is not such a case.

### B.

Rising Sun also contends that the district court erred in denying its motion to dismiss Count III of Calumet's complaint and in granting Calumet's motion to amend its complaint. The motion to dismiss was premised on the notion that Calumet had failed to comply with the 90–day notice requirement of the Illinois Mechanics' Lien Act. Calumet's original complaint referred in places to "subcontracts" between Rising Sun and Mid–America, rather than a single contract; Rising Sun argued that Calumet could not claim a valid lien because it had not provided the requisite notice to Rising Sun after each invoice sent to Mid–America, or, in other words, because Calumet had not provided one notice for each of the "subcontracts." The district court, which felt that Rising Sun was "seiz[ing] on pleading inconsistencies in the complaint which are easily correctable," permitted Calumet to amend its complaint to allege a single contract and held that Rising Sun was not entitled to judgment as a matter of law: "Because the subcontract may have been a single contract for an open account, Rising Sun fails to show there is clearly no set of facts supporting Calumet's claim."

The short answer to Rising Sun's objection to the court's ruling is that the issue is now

moot. Asserting its own defenses against Calumet cannot relieve Rising Sun of its obligation to satisfy the default judgment in favor of Mid–America, which has agreed to pay Calumet and Custom Brick the money it owes them under the subcontracts. Another answer is that the decision to allow a party to amend its complaint lies within the sound discretion of the district court. *See Perrian v. O'Grady,* 958 F.2d 192, 194 (7th Cir.1992). Still another is that, because the original complaint itself made reference both to "subcontracts" and to a single "subcontract,"[3] the amendment merely clarified the original complaint. There are other responses, but these should suffice.

The judgment of the district court is AFFIRMED.

---

3. Indeed, Count III of the original complaint— the count specifically directed at Rising Sun— refers to "the subcontract between Mid–America and Calumet."