William W. BUCK, Defendant-Appellant,

v.

P. J. T., Plaintiff-Appellee.

No. 3–978A243.

Court of Appeals of Indiana.

Sept. 10, 1979.

Rehearing Denied Jan. 14, 1980.

Anthony V. Luber, South Bend, for defendant-appellant.

Bruce H. Stewart, Leibowitz & Stewart, South Bend, for plaintiff-appellee.

GARRARD, Presiding Judge.

On February 14, 1974 P. J. T. commenced this action against Buck to have him declared the father of her child. A warrant was issued but was cancelled at her request on February 20th. Summons was then issued and served upon Buck by certified mail at a residence address in Illinois. The return receipt signed "Janis Buck" was dated February 22, 1974. When no appearance was entered by March 18th a new warrant was ordered issued. Subsequently, on December 13, 1974, judgment by default was entered against Buck. Nearly three years later, on October 28, 1977, Buck filed a motion to set aside the judgment. He brings this appeal from the denial of that motion asserting that the court lacked personal jurisdiction.

It is not disputed that there was a sufficient contact basis for the Indiana courts to exercise jurisdiction in this case. *See Neill v. Ridner* (1972), 153 Ind.App. 149, 286 N.E.2d 427.

Instead Buck's attack is premised upon the notice requirements necessary to due process. *See Mullane v. Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865.

In examining his assertion we must bear in mind a distinction ignored in his argument. There is a difference between a form of service that is not reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to be heard and a form that, while reasonably calculated to give actual notice, fails to do so in a specific case. In the former, personal jurisdiction is not acquired because the proceeding fails to accord due process. In

the latter, personal jurisdiction is present. However, the result of its exercise may be set aside as a matter of fairness and good conscience. *See, e. g.*, Indiana Rules of Procedure, Trial Rule 60(B).

■ The form of service on non-residents here employed under TR 4.4(B) is precisely the same as that for service upon residents. TR 4.1(A)(1). Service delivered by United States mail, postage prepaid, as certified mail with a return receipt satisfies the method requirement of due process. No contention is made that the information contained was inadequate or that inadequate time to respond was provided. Since actual delivery to the party is not jurisdictionally necessary, Buck's argument that the court failed to acquire personal jurisdiction fails.

■ Moreover, it does not appear the court erred in refusing to grant relief under TR 60(B). At no point does Buck assert that he did not receive timely actual notice. Nor, for that matter, does he assert any reasons explaining the long delay in filing his TR 60 motion. No abuse of discretion appears.

Finally, Buck argues that in accord with *Neill v. Ridner, supra,* he is entitled to reversal because of the existence of the warrant for his arrest. We disagree.

The statute governing paternity actions authorizes the use of civil process or a warrant. IC 31–4–1–15. However, in *Neill* the court found upon the facts present that the pendency of the warrant during and following the use of civil process created such an obstacle to Neill's participation in his defense as to constitute a denial of due process. Neill had been represented by counsel who appeared specially shortly after the action was commenced and who "contested jurisdiction at virtually every stage of the proceedings." Despite this representation "on two occasions [during the pendency of the action] the court specifically refused or failed to recall the outstanding warrants after a ruling that service had been made on the defendant." 286 N.E.2d at 431. The court concluded that continuance of the

warrants *after* the determination that service had been successful could only serve the purpose of vindictiveness or harassment and that they substantially interfered with Neill's right to be heard.

■ The case before us is totally different in the significant particulars. Here, while a warrant was issued, it was recalled when service by summons was attempted. During the twenty-three days following delivery of the summons no warrant was outstanding. That period, of course, equals the time permitted by TR 6(C) and (E). Although a warrant was again issued on March 18th, there had been no judicial determination of the adequacy of service. Not at any point did Buck seek to have the warrant withdrawn. In short, upon the facts now before us it does not appear that his ability to appear and defend himself was in any manner actually impinged upon by the existence of the warrant. Accordingly, there was no denial of due process.

Affirmed.

HOFFMAN, J., concurs.

STATON, J., dissents and files separate opinion.

STATON, Judge, dissenting.

I dissent. The majority opinion attempts to demonstrate the inapplicability of *Neill v. Ridner* (1972), 153 Ind.App. 149, 286 N.E.2d 427 to the facts in the present appeal by making these distinctions: (1) that twenty-three days followed delivery of the summons while no warrant was outstanding; (2) "there had been no judicial determination of the adequacy of service" and, (3) Buck did not "at any point . . . seek to have the warrant withdrawn." These distinctions are specious and do not represent the touchstones of the *Neill* rationale which concluded that Neill had been denied due process of law. The needless, concurrent existence of a warrant and summons is error. Here, the warrant was permitted to exist for nine months after good service of summons had been obtained. The lurking threat of incarceration had a chilling and stultifying effect upon Buck's

opportunity to be heard and to defend himself before judgment; therefore, Buck was denied due process of law. The default judgment should be set aside, and Buck should be given the opportunity to be heard without the threat of incarceration.

The rationale of *Neill* is that summons and warrants are exclusive means of service under IC 1971, 31–4–1–13,[1] Ind.Ann.Stat. § 3–635 (Burns 1968), and that their concurrent existence as a means of service is error. This rationale concludes that reversible error exists when the concurrent existence of the warrant extends past any legal purpose. When the warrant lacks legal purpose, its existence serves only as an impermissible barrier to due process. Judge Robertson, writing the opinion in *Neill*, stated:

> "[W]e are of the opinion that the outstanding warrants, after service of summons was accomplished, served to deny the defendant the right to be fully heard in court, and was, therefore, a denial of due process of law.
>
> "There was obvious error in that both summons and warrants existed concurrently. IC 1971 31–4–1–13, Ind.Ann.Stat. § 3–635 (Burns 1968) does not contemplate such a situation, for it specifically relates that a warrant be issued *in lieu* of a summons, but more importantly the plaintiff effectively erected barriers of sufficient strength to keep the defendant from fully presenting his case, i. e., participation in blood testing, assisting counsel in cross-examination, and testifying in his own behalf, unless he subjected himself to the possibility of the now needless sanctions of incarceration and all that is entailed therein."

286 N.E.2d at 430.

The majority opinion's first attempted distinction is not related to the *Neill* rationale—the impermissible effect of a warrant without legal purpose. Any failure of a party to respond to a paternity petition within twenty-three days after service of summons under TR. 6(C)(E) should not result, as suggested by the majority opinion, in the issuance of a warrant for the arrest of the party failing to respond; rather, a motion for a default judgment seems more appropriate. In *Neill*, an attorney had made a special appearance for Neill to contest jurisdiction on September 11, 1969. Later, "[o]n November 19th, and December 19th, 1969, bench warrants were issued for the arrest of the defendant. . . ." *Neill, supra*, 286 N.E.2d at 428. Personal service on Neill was not achieved until a year later, November 25, 1970. It is the existence of the warrant after no legal purpose for its existence can be justified that relates to the *Neill* rationale. The foreclosure of an opportunity to respond without sanctions and not the mere opportunity to respond without a warrant is the touchstone of the *Neill* rationale.

The second attempted distinction by the majority opinion, judicial determination of the adequacy of service, is equally specious, since it is the existence of a legal purpose for the warrant and not a judicial determination or ruling on the adequacy of service that triggers the denial of due process. The discussion of the trial court's ruling of adequacy of service in *Neill* was merely to illustrate and underscore the obvious vindictiveness and harassment purposes of the outstanding warrants. Judge Robertson stated in his opinion that "[t]he ruling that service had been successful destroyed any legal efficacy of the warrants and the only remaining value they could have would be that of vindictiveness or harassment." *Neill, supra*, 286 N.E.2d at 431. A default judgment was rendered against Buck. This entry of judgment would seem to be a decisive ruling on the adequacy of service; indeed, a very difficult ruling to overcome. To avoid the attempted distinction placed by the majority opinion upon the *Neill* opinion, Judge Robertson further stated:

> "Lest this holding be misconstrued, the issuance of either a summons or a war-

---

1. Repealed effective October 1, 1979 by Acts 1978, P.L. 136 § 57. For present law see IC 31–6–7–4 and 5 (Burns Code Ed., Supp.1978).

rant is proper as provided by law. It is where, as under the facts of this case, the warrant serves no further legal purpose that its continued existence amounts to a denial of due process."

*Neill, supra,* 286 N.E.2d at 431.

The majority opinion's third distinction is even more untenable than its first or second distinctions: Buck did not "at any point . . . seek to have the warrant withdrawn." A summons was issued and served upon Buck by certified mail. The return receipt signed by Buck was dated February 22, 1974. This service of summons as the majority opinion points out was supportive of a default judgment against Buck. There was no need for a warrant. However, a warrant was issued on March 18, 1974, and it existed concurrently with a valid service of summons until December 23, 1974—nine months later—when the trial court rendered a default judgment against Buck. Under the *Neill* rationale, no legal purpose existed for the warrant since good service with a summons had already been obtained; therefore, the only remaining value of the warrant would have been that of "vindictiveness or harassment." Under the *Neill* rationale, the result of the concurrent existence of a warrant without legal purpose with a summons properly served is a denial to "the defendant the right to be fully heard in court * * * unless he subjected himself to the possibility of the now needless sanctions of incarceration and all that is entailed therein." *Neill, supra,* 286 N.E.2d at 430. To suggest that Buck should seek to have the warrant withdrawn by submitting himself to incarceration is unrealistic and unnecessary. Under the *Neill* rationale the mere threat of incarceration by warrant after any legal purpose for the warrant no longer exists is a denial of due process of law.

The majority opinion has not distinguished *Neill v. Ridner, supra,* from the facts in Buck's appeal. The warrant for Buck's arrest existed concurrently with a good service of summons for nine months before judgment without a legal purpose. This long, unnecessary, and concurrent ex-

istence of a warrant without legal purpose with good service of summons denied Buck due process of law. The default judgment of the trial court should be set aside and a new trial granted.