Robert SWAIM, Plaintiff–Appellee,

v.

MOLTAN COMPANY, Defendant–Appellant.

No. 94–3931.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 11, 1995.

Decided Jan. 8, 1996.

Barry A. Macey (argued), Nora L. Macey, Macey, Macey & Swanson, Indianapolis, IN, for Plaintiff–Appellee.

Thomas Campbell (argued), Nicole M. Smith, Gardner, Carton & Douglas, Chicago, IL, John D. Horne, B.J. Gurley, Moltan Company, Memphis, TN, for Defendant–Appellant.

Before BAUER, KANNE, and DIANE P. WOOD, Circuit Judges.

KANNE, Circuit Judge.

Plaintiff obtained a default judgment in an action for wrongful termination of employment. Defendant appeals from both the default judgment and the district court's denial of its motion to vacate that judgment pursuant to Fed.R.Civ.P. 55(c) and 60(b). The question before us is whether either of these two decisions manifests an abuse of discretion. We find that the district court exercised sound discretion in entering the default judgment and in denying defendant's motion for Rule 60(b) relief.

I

A

Moltan Company, which is based in Memphis, Tennessee, markets petroleum absorption products in Indiana and the several States. Moltan hired Robert Swaim on March 1, 1990, as a regional sales manager for the territory encompassing Alabama, Arkansas, Georgia, Kansas, Louisiana, Mississippi, Missouri, and Tennessee. Moltan later reconfigured Swaim's territory to include Alabama, Georgia, Kentucky, Indiana, Ohio, Tennessee, and West Virginia. Swaim alleges that Moltan initiated the reconfiguration, but Moltan claims the change accommodated Swaim's wish to move from Nashville, Tennessee, to Indianapolis, Indiana, so he could marry. Shortly after this reconfiguration, Moltan terminated Swaim on August 14, 1992, citing unsatisfactory job performance.

Swaim filed an administrative complaint with the Equal Employment Opportunity Commission ("EEOC") pursuant to 29 U.S.C. § 626(d)[1] on December 23, 1992, alleging that Moltan had terminated him because of his age in violation of 29 U.S.C. § 623(a). After receiving a right to sue notice from EEOC, Swaim filed a complaint and demand for jury trial in the Southern District of Indiana on June 7, 1993, seeking back pay, liquidated damages, and reinstatement. That day, Swaim's counsel mailed a copy of the complaint and summons by certified mail with return receipt requested to B.J. Gurley, the chief executive of Moltan, at Moltan's business address in Memphis, Tennessee. The postal service returned the papers unclaimed, and Swaim's counsel then hired a private process server to deliver the papers personally to Moltan's office.

The process server arrived at Moltan's office on August 11, 1993, and Jean Black, B.J. Gurley's secretary, refused to accept the complaint and summons. The process server left the papers at Black's feet, and Black mailed the papers back to the process server's office. Swaim's counsel then delivered the complaint and summons to the Indiana Secretary of State on September 3, 1993, in accordance with Indiana Trial Rule 4.4, which nominates the Secretary of State as the agent of persons and organizations doing business in Indiana with regard to service of process. Ind.Code § 34, app. T.R. 4.4(B). The Secretary of State mailed the papers by

---

1. The current Code of Federal Regulations provides for such administrative complaints at 29 C.F.R. §§ 1626.5, 1626.6 (1995).

certified mail with return receipt requested to Moltan at its Memphis address, and the papers were returned unclaimed on September 18, 1993.

The clerk of the district court entered default against Moltan upon Swaim's motion under FED.R.CIV.P. 55(a) on December 29, 1993. The district court subsequently ordered default judgment against Moltan in the amount of $197,733.04 and also awarded Swaim $4,681.75 in fees and costs. Moltan promptly filed a motion to set aside the default judgment according to FED.R.CIV.P. 55(c) and 60(b) on January 28, 1994.[2] Moltan asserted in its Rule 60(b) motion that ineffective and "confused" service of process amounted to good cause for setting aside the judgment. It also claimed that the meritorious defenses articulated in its proposed answer would prevail should the case go to trial. The district court denied Moltan's motion on November 23, 1994. It concluded that Moltan had failed to show good cause for setting aside the default judgment because service of process had been substantially accomplished and Moltan had actively evaded such service.

### B

■ Moltan filed its notice of appeal on December 2, 1994, from both the default judgment and the denial of the motion to set the default judgment aside. We have jurisdiction to address both the default judgment and the order denying Rule 60(b) relief. A motion for relief from judgment under FED. R.CIV.P. 60, if filed within ten days after the entry of judgment, resets the thirty-day period in which to file a notice of appeal. FED. R.APP.P. 4(a)(4)(F). The thirty-day clock prescribed by Rule 4(a)(1) then begins to run the day the district court rules on the Rule 60 motion. *United States v. Duke,* 50 F.3d 571, 574 (8th Cir.), *cert. denied,* — U.S. —, 116 S.Ct. 224, 133 L.Ed.2d 154 (1995). Moltan filed its Rule 60(b) motion ten days after the default judgment and thus reset the default judgment appeal clock to begin running on November 23, 1994, when the district

court entered its order denying Moltan's Rule 60(b) motion. We may therefore review both decisions of the district court. *See Glass v. Dachel,* 2 F.3d 733, 738 (7th Cir. 1993).

### II

### A

■ This court will reverse a district court's default judgment only upon finding an abuse of discretion. *Pretzel & Stouffer v. Imperial Adjusters, Inc.,* 28 F.3d 42, 45 (7th Cir.1994). This standard of review reflects the district court's institutional position as the forum best equipped for determining the appropriate use of default to ensure "that litigants who are vigorously pursuing their cases are not hindered by those who are not" in an environment of limited judicial resources. *Johnson v. Gudmundsson,* 35 F.3d 1104, 1117 (7th Cir.1994) (quoting *Stevens v. Greyhound Lines, Inc.,* 710 F.2d 1224, 1230 (7th Cir.1983)). We will, however, set aside a default judgment as a *per se* abuse of discretion if the district court that entered the judgment lacked jurisdiction. *Bally Export Corp. v. Balicar, Ltd.,* 804 F.2d 398, 400 (7th Cir.1986).

■ Moltan appeals from the default judgment raising an argument it did not include in its Rule 60(b) motion to the district court: that it is a legal nonentity incapable of being sued. Moltan devoted little attention to this claim either in its brief or at oral argument, and we are unable to divine the precise basis of this challenge. It appears to rest on one of two assertions. First, by contesting its amenability to lawsuit, Moltan may be challenging the district court's exercise of personal jurisdiction. Second, Moltan may be suggesting that it lacks the capacity to be sued contemplated by the drafters of FED. R.CIV.P. 17(b). We need not decipher this puzzle, however, because Moltan has forfeited both arguments by failing to raise either of them in its Rule 60(b) motion.

---

**2.** Moltan also requested leave to file an answer to Swaim's complaint, in which it set forth its allegedly meritorious defenses. The district court eventually denied this motion as moot in light of the its decision denying the requested Rule 60(b) relief.

B

■ Moltan has forfeited the opportunity to contest the district court's exercise of personal jurisdiction. Generally, the failure to challenge personal jurisdiction in a responsive pleading amounts to a forfeiture of that claim. *Rice v. Nova Biomedical Corp.,* 38 F.3d 909, 914 (7th Cir.1994), *cert. denied,* —— U.S. —— 115 S.Ct. 1964, 131 L.Ed.2d 855 (1995). A defaulted party, however, has not forfeited his jurisdictional challenge. *Reynolds v. International Amateur Athletic Fed'n,* 23 F.3d 1110, 1120 (6th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 423, 130 L.Ed.2d 338 (1994). The nature of default accounts for this different treatment because a defaulted party has typically failed to appear or file an answer. *See, e.g., Stafford v. Mesnik,* 63 F.3d 1445 (7th Cir.1995); *Pretzel & Stouffer,* 28 F.3d 42; *O'Brien v. R.J. O'Brien & Assocs., Inc.,* 998 F.2d 1394 (7th Cir.1993). The defaulted party may ascribe this failure to flawed or nonexistent service of process or other factors that suggest the district court's lack of personal jurisdiction. This exception to the general forfeiture rule recognizes that it is unfair to strip parties of a defense that may explain the omission that is potentially the basis for judgment against them. A defaulted party may therefore challenge the district court's exercise of personal jurisdiction in a motion for Rule 60(b) relief. *Cf. International Harvester v. OSHRC,* 628 F.2d 982, 984 (7th Cir.1980) (holding that issue preclusion does not obtain from a default judgment regarding issues not actually decided by the judgment).

A motion for relief under Rule 60(b) "does not affect the finality of a [default] judgment or suspend its operation." FED.R.CIV.P. 60(b). The addition of subsection (F) to FED. R.APP.P. 4(a)(4) supplements this proviso by suspending the running of the appeal period from an otherwise final judgment until the disposition of a timely Rule 60 motion. Taken literally, these provisions would allow a party two avenues of appeal from a default judgment. For while an appeal from denial of Rule 60(b) relief is technically reviewed

only on the grounds of the denial itself, the district court will have predicated its decision, in part, upon the reasons for which it ordered the original default. FED.R.APP.P. 4(a)(4)(F) therefore leaves the door ajar for a party to appeal directly from a default judgment on grounds wholly distinct from those iterated in its Rule 60 motion. And where, as in most cases, the party appeals from both the default and the denial of relief, there exists the possibility of divergent arguments on appeal.

■ The interplay of FED.R.APP.P. 4(a)(4)(F) and FED.R.CIV.P. 60(b) thus creates a potential problem in light of the different foci of reviewing default judgments and denials of motions to vacate. In reviewing a default judgment, we examine the merit of the judgment, while review of a denial of a motion to set aside such a judgment involves only an inquiry into the actual denial of postjudgment relief—not into the merits of the predicate default judgment. *See Stafford,* 63 F.3d at 1450.

The problem arises when a defaulted party, after making a Rule 60(b) motion, appeals from the original default judgment on grounds different from those stated in his motion for Rule 60(b) relief, thereby putting before the court of appeals at least one argument that the district court neither heard nor addressed. To allow such a state of affairs would leave this court in the awkward position of reviewing a judgment for an abuse of discretion with respect to a jurisdictional challenge the district court never considered. What sort of discretion was exercised? None, because the district court never heard the argument. We would therefore be reviewing no exercise of discretion for an abuse of discretion.[3]

■ Certainly, a party does not forfeit his right to appeal from a default judgment by virtue of making a motion under Rule 60(b). The default judgment remains viable for appeal subject to the time requirements of FED. R.APP.P. 4(a)(4)(F). This does not mean,

3. We recognize that a direct appeal from a default judgment could pose the same dilemma, but in such a case, we would likely remand the case to the district court for additional findings concerning the appellant's claim(s). This accords with our holding in the present case; the district court is the proper forum in which to air questions of fact.

however, that the Rule 60(b) motion should have no bearing upon the subsequent appeal from the default judgment. A direct appeal may pose questions of fact, as illustrated by the present case in which Moltan alleges that its status as a sole proprietorship makes it a legal nonentity and incapable of being sued. Such questions are the province of the district court.

■■■■ These concerns have prompted this circuit to conclude that *in personam* jurisdictional challenges to default judgments are forfeited if not asserted in a Rule 60(b) motion, if such a motion is made. *O'Brien*, 998 F.2d at 1398–99; *Trustees of Central Laborers' Welfare Fund v. Lowery*, 924 F.2d 731, 732–33 (7th Cir.1991) (per curiam); *In re State Exchange Finance Co.*, 896 F.2d 1104, 1106 (7th Cir.1990). This forfeiture rule reflects the functional similarity between a personal jurisdictional challenge to a default judgment and a motion to dismiss for lack of jurisdiction under FED.R.CIV.P. 12(b)(2). A defense of lack of jurisdiction is forfeited if not asserted in a timely motion to dismiss under Rule 12 or a responsive pleading or amendment of such as provided by Rule 15. FED.R.CIV.P. 12(h);[4] *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703, 102 S.Ct. 2099, 2105, 72 L.Ed.2d 492 (1982). A motion to vacate under Rule 60(b) for lack of jurisdiction is essentially equivalent to a Rule 12(b)(2) motion to dismiss for lack of jurisdiction. The moving party is not asking that it be given a chance to defend on the merits; it is questioning the court's ability to require it to do so. If the district court finds itself without jurisdiction based upon the movant's 60(b) presentation, then it is obligated to dismiss the case because it has no authority over the defendant. The default judgment is void. *In re Joint Eastern & Southern Districts Asbestos Litigation*, 22 F.3d 755, 763 (7th Cir.1994) (stating that lack of personal jurisdiction nullifies a judgment). If the court finds otherwise, the defaulted party can appeal the denial of Rule 60(b) relief, and we are obligated to vacate the default judgment as a *per se* abuse of discretion if we find it void for lack of jurisdiction. *Bally Export Corp.*, 804 F.2d at 400.

C

■■■■ While this circuit has not addressed the precise issue, there is no logical basis for different treatment of the capacity issues addressed in Rules 9(a) and 17(b) of the Federal Rules of Civil Procedure. Questions involving a party's capacity to sue or be sued will likewise turn upon issues of fact—issues properly allocated to the forum of the district court. Like questions pertaining to personal jurisdiction, those involving capacity must therefore be identified in either a responsive pleading or motion. FED.R.CIV.P. 9(a). Failure to raise capacity in a responsive pleading amounts to forfeiture of that right. *Wagner Furniture Interiors, Inc. v. Kemner's Georgetown Manor, Inc.*, 929 F.2d 343, 345 (7th Cir.1991). The *Wagner* court premised its holding upon the requirement in Rule 9(a) that capacity must be plead by "specific negative averment" and the harmonious interpretations of that language employed by several other circuits. *Id.* (collecting cases).

■■■■ The pleading requirements for capacity thus correspond to those for personal jurisdiction. The forfeiture rule for capacity parallels the rule embodied in FED.R.CIV.P. 12(h) regarding personal jurisdiction, and we now recognize its logical extension to correspond with the rule we previously announced in *O'Brien*, *Lowery*, and *State Exchange Finance Corp.* A party must aver any issues of capacity that it believes merit setting a default judgment aside in order to preserve those questions for appeal should it choose to file a motion for Rule 60(b) relief.

4. Although Rule 12 describes the effect of such failure as "waiver," the actual result is forfeiture, which is the failure to make a timely assertion of a right before a tribunal competent to determine such right. *Yakus v. United States*, 321 U.S. 414, 444, 64 S.Ct. 660, 677, 88 L.Ed. 834 (1944). Waiver, by contrast, is the "intentional relin- quishment or abandonment of a known right." *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). *See also Freytag v. Commissioner*, 501 U.S. 868, 872 n. 2, 111 S.Ct. 2631, 2635 n. 2, 115 L.Ed.2d 764 (1991) (Scalia, J., concurring in part and in the judgment).

## D

The present case illustrates the problems attending ventilation of factual issues for the first time in a court of appeals. Swaim has moved to strike Moltan's capacity argument and the supporting documents appended to its brief. He also has requested that we take judicial notice of facts concerning Moltan's commencement of a lawsuit in the United States District Court for the Western District of Tennessee and a provision of the Indiana Code imposing a filing requirement upon entities doing business in Indiana under assumed names.

Moltan has correctly stated in reply to the motion to strike that a void judgment may be attacked directly or collaterally at any time in a motion under FED.R.CIV.P. 60(b)(4). Yet that is precisely what Moltan did. Moltan stated in its Rule 60(b) motion that the judgment was void due to allegedly ineffective service of process, but there was no mention of capacity or personal jurisdiction. It omitted the jurisdiction/capacity issue it now presents on appeal. Moltan's statement of the salient law thus fails either to resuscitate its argument or to address the concerns informing our decision.

In response to Swaim's request for judicial notice, Moltan has stated that B.J. Gurley appeared in the Tennessee litigation following questions about Moltan's capacity to sue, and, in any event, the facts alleged by Swaim do not preclude Moltan from raising capacity in the present case. Swaim and Moltan ask us to decide questions of fact that were never considered by the district court but might have been had they been raised at the proper time.

 The upshot of all this? A party is free to devote its fifty pages (FED.R.APP.P. 28(g)) to whatever arguments it chooses; it is for us then to determine which issues are in play. As for the supporting documents, they are immaterial if the argument to which they pertain is forfeited. Requests for judicial notice are likewise material only to the extent that the noticed facts are relevant to an issue that we would decide in the case before us. In this case, Moltan has forfeited its jurisdiction/capacity argument, and we ac-cordingly deny Swaim's motion to strike and requests for judicial notice as moot.

## E

 Our conclusion promotes the twin concerns of juridical efficiency and respect for the unique factfinding capability of a district court. Questions of capacity and personal jurisdiction will always turn, in part, upon findings of fact, and the district court is better equipped to make these determinations than is a court of appeals. This is not to deny our jurisdiction to entertain a direct appeal from a default judgment, *see* 28 U.S.C. § 1291, but when a party chooses to utilize the attention and limited resources of a district court in a motion under Rule 60(b), we think it just and proper that it be required to put before the district court whatever infirmities support setting aside the default judgment. This brings to bear the district court's factfinding function and unique knowledge of the case and maintains the court of appeals' role as a forum for resolving disputed questions of law—not fact.

## III

### A

 Moltan's viable argument is that the default judgment is void for lack of personal jurisdiction because of ineffective service of process. Valid service of process is a prerequisite to a district court's assertion of personal jurisdiction. *Omni Capital Int'l v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 103, 108 S.Ct. 404, 409, 98 L.Ed.2d 415 (1987). Valid service of process comprises more than actual notice; it requires a legal basis for holding the defendant susceptible to service of the summons and complaint. *Id.*

 In federal question cases, the statute giving rise to the cause of action may prescribe rules for service of process upon nonresident corporations and associations. But in the absence of any such provision, service of process is governed by the law of the state in which the district court is locat-

ed. FED.R.CIV.P. 4(h), 4(e).[5] "Thus, under Rule 4(e), a federal court normally looks either to a federal statute or to the long-arm statute of the State in which it sits to determine whether a defendant is amenable to service." *Omni Capital,* 484 U.S. at 105, 108 S.Ct. at 410; *Dehmlow v. Austin Fireworks,* 963 F.2d 941, 945 (7th Cir.1992); *United Rope Distributors, Inc. v. Seatriumph Marine Corp.,* 930 F.2d 532, 535 (7th Cir.1991). The federal courts are strictly bound in such cases by the letter of state law and are without authority to fill whatever interstitial gaps a given case may illuminate. *Omni Capital,* 484 U.S. at 108, 108 S.Ct. at 412.

■ The Age Discrimination in Employment Act does not provide for nationwide service of process, and one must therefore resort to Indiana law for service of process. The same rule that subjects Moltan to the jurisdiction of Indiana courts also states that service of process may be made as provided by Indiana Trial Rule 4.6. IND.CODE § 34, app. T.R. 4.4(B)(1). Under Rule 4.6, service upon a domestic or foreign organization may be effected by service upon an executive officer of the organization in accordance with the rules governing service on individuals set forth in Rule 4.1. In addition, Rule 4.4(B)(2) states that a person who is subject to Indiana jurisdiction under Rule 4.4(A) is "deemed to have appointed the Secretary of State as his agent upon whom service of summons may be made as provided in Rule 4.10." IND. CODE § 34, app. T.R. 4.4(B)(2). Thus Rules 4.1 and 4.10 outline the methods by which Moltan could have been served with process. *LaPalme v. Romero,* 621 N.E.2d 1102, 1104 (Ind.1993).

B

Moltan claims that its status as a sole proprietorship exempts it from the scope of Trial Rule 4.6. One Indiana court has intimated that a sole proprietorship is not an organization within the meaning of Trial Rule

4.6. *Washington v. Allison,* 593 N.E.2d 1273, 1275 (Ind.Ct.App.1992). Yet the dicta in that decision does not rescue Moltan from its intentional failure to acknowledge service. The same *Washington* court explicitly wrote that Trial Rules 4.1 and 4.6 are discretionary and therefore serve only to outline general guidelines for service of process:

> Ind.Trial Rules 4.1 and 4.6 provide that service *may be made* upon an individual, in the case of T.R. 4.1, or upon an organization, in the case of T.R. 4.6. In contrast, other rules provide that service *shall be made* upon certain parties in a designated manner.... The discretionary nature of T.R. 4.1 and T.R. 4.6, coupled with the provision in T.R. 4.15(F), ... is evidence that personal jurisdiction is acquired by any method of service of summons which comports with due process.

593 N.E.2d at 1275. The court concluded that the party's status as a sole proprietorship was "not particularly significant" for the service of process issue. *Id.*

■ The Due Process Clause of the Fourteenth Amendment requires that service of process be reasonably calculated both to apprise a party of the pendency of an action and to provide it with an opportunity to respond. *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Indiana has codified this requirement in its rules of trial procedure:

> No summons or the service thereof shall be set aside or be adjudged insufficient when either is reasonably calculated to inform the person to be served that an action has been instituted against him, the name of the court, and the time within which he is required to respond.

IND.CODE § 34, app. T.R. 4.15(F). Indiana courts employ an objective test in their service of process calculus: whether due process is satisfied depends on the form of service, not on whether the affected party was actually notified. *Glennar Mercury–Lincoln, Inc.*

---

5. The 1993 amendments to the Federal Rules consolidated in the new subdivision (e) the substantive provisions of former subdivisions (c)(2)(C)(i), (d)(1), and (e). This amendment did not take effect until after the attempts at service of process by Swaim upon Moltan. The new subdivision (e) made no substantive change with regard to the use of state service of process rules, and for the sake of convenience we refer to Rule 4(e) in examining the sufficiency of service of process in this case.

*v. Riley,* 167 Ind.App. 144, 338 N.E.2d 670, 675 (1975). Service of process that is reasonably calculated to inform, consistent with the letter of Trial Rule 4.15(F), is sufficient even if it fails to actually inform the party to which it is directed. *See Buck v. P.J.T.,* 182 Ind. App. 71, 394 N.E.2d 935, 936 (1979). The focus of our inquiry is therefore whether the district court abused its discretion when it found that the three attempts at service were reasonably calculated to inform Moltan of the pending action.

### C

The district court exercised sound discretion by entering the default judgment on January 18, 1994. It had evidence of three attempts at service by Swaim: two attempts at direct service and one attempt through the Indiana Secretary of State. We have already described the circumstances of each attempt and do not restate them here. A defaulted party must show a good faith reason for failing to appear, "meaning that we will grant relief only where the actions leading to the default were not willful, careless, or negligent." *Johnson,* 35 F.3d at 1117 (internal quotes and citations omitted). Moltan's conduct does not even approach this threshold.

Swaim's first attempt to serve Moltan accorded with the spirit and letter of the Indiana Trial Rules. *See, e.g., Precision Erecting, Inc. v. Wokurka,* 638 N.E.2d 472 (Ind.Ct.App.1994) (holding that plaintiff's own transmission of summons and complaint via certified mail was effective service of process). His second attempt was also legitimate, and we find that the district court was within its discretion in finding that Jean Black had authority to accept B.J. Gurley's official mail and that her refusal to do so was a breach of the duty mandated by Trial Rule 4.16. The third attempt was also within the letter of Indiana law because Moltan has appointed the Secretary of State as its agent for service of process. IND.CODE § 34, app. T.R. 4.4(B), 4.10. We agree with the district court that Moltan attempted "to evade service of process in violation of its duties pursuant to Indiana Trial Rule 4.16(A)."

The district court correctly relied upon Indiana Trial Rule 4.15. This rule reflects the discretionary character of the service of process provisions of the Indiana Trial Rules and consequently cures only technical defects in service and not total failure of service. *LaPalme,* 621 N.E.2d at 1106. It also requires a court to examine the entire record of attempted service to determine whether that service was sufficient.

> Because the literal requirements of Rules 4 through 4.13 represent the ideal as to the mechanics of preparing the summons ... [and] the details of how each mode of service should be effectuated, ... the reasonableness of the service actually employed shall be measured by the degree of compliance with those specifics.

*Glennar Mercury–Lincoln, Inc.,* 338 N.E.2d at 675. Of course, a party may not disregard the language of the applicable Trial Rules, but neither is literal compliance with those rules necessary under Indiana law. The district court found two technical defects in service and determined them cured by Rule 4.15; we endorse that decision.

The district court also wrote that Moltan willfully avoided the proper attempts at service. "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, [we] may not reverse it even though convinced that had [we] been sitting as the trier of fact, [we] would have weighed the evidence differently." *Anderson v. City of Bessemer City,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985). We will disturb only those factual findings that strike us as wrong with the "force of a five-week old, unrefrigerated dead fish." *United States v. Markling,* 7 F.3d 1309, 1319 (7th Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 1327, 131 L.Ed.2d 206 (1995). What is rotten in this record is Moltan's continued effort to avoid service of process and frustrate the efficient administration of justice. Such circumstances warrant the use of default. *See United States v. DiMucci,* 879 F.2d 1488, 1493 (7th Cir.1989).

### IV

Moltan also appeals from the district court's order denying the motion for

relief under FED.R.CIV.P. 55(c) and 60(b). A district court will grant relief from a final judgment pursuant to Rule 60(b) only in exceptional circumstances and has great latitude in which to make its decision. *See Tolliver v. Northrop Corp.*, 786 F.2d 316, 319 (7th Cir.1986) ("The decision under 60(b) is discretion piled on discretion."). A court may vacate a default judgment when the moving party demonstrates (1) good cause for its default; (2) quick action to correct the default; and (3) a meritorious defense to the plaintiff's complaint. *O'Brien*, 998 F.2d at 1401. Other factors necessarily influence the district court's decision. The court must weigh the burden on its docket, the legitimate reliance on the default by the nonmoving party, and the policy considerations favoring termination of stalled litigation against the possibility of injustice based, in part, upon the substantive merit of the nonmovant's claims and the moving party's proffered excuses for the default. *Dimmitt & Owens Fin., Inc. v. United States*, 787 F.2d 1186, 1193 (7th Cir.1986).

 The calculus involved in a Rule 60(b) decision leads us to give great deference to the district court's eventual decision. "With the standard of decision so multifaceted, the appellate court's ability to fault the district judge's application of the standard is quite limited, and the scope of effective judicial review is therefore slight." *Id.* The scope of our review is also narrow: we review only the Rule 60(b) decision itself for an abuse of discretion and will not visit the merits of the underlying default judgment. *Stafford*, 63 F.3d at 1450; *Pretzel & Stouffer*, 28 F.3d at 45.

The district court found that Moltan had failed to demonstrate the elements requisite to vacating the default judgment. We believe that the district court's lengthy entry explaining its denial of Moltan's Rule 60(b) motion evinces sound reasoning and judicious discretion. As we have previously discussed, Moltan has not identified good cause for its default; any further exposition would be superfluous. This lack of proof makes Moltan's quick action to cure the default immaterial and eliminates the need for us to address the question of its allegedly meritorious defenses.

The default judgment and order denying appellant's motion for relief under FED. R.CIV.P. 60(b) are AFFIRMED.