**TABBERT, HAHN, EARNEST AND WEDDLE, P.C., Plaintiff,**

v.

**Joseph LANZA and Jayne Lanza, Defendants.**

**No. IP 99–0466–C–T/G.**

United States District Court, S.D. Indiana, Indianapolis Division.

March 31, 2000.

Gregory F Hahn, Tabbert Hahn & Earnest, Indianapolis, IN, for plaintiff.

Gustin J Raikos, Indianapolis, IN, for defendants.

## ENTRY DISCUSSING PENDING MOTIONS

TINDER, District Judge.

This matter comes before the court on four motions: (1) Motion for Remand and Objection to Removal of Civil Action ("Motion for Remand"); (2) Defendants' Motion to Dismiss ("Motion to Dismiss"); (3) Motion to Quash Deficient Service of Process, and to Strike Judgment Entered after Removal of Action Based upon Such Service ("Motion to Quash Service, and to Strike Judgment"); and, (4) Motion to Vacate Void State Court Judgment Entered of Record Subsequent to Removal of Action ("Motion to Vacate Judgment"). The Motion for Remand was filed by Plaintiff Tabbert, Hahn, Earnest and Weddle, P.C. ("Tabbert"), and the other three motions were filed by Defendants, Joseph Lanza ("Mr.Lanza") and Jayne Lanza ("Ms.Lanza"). After considering the motions and the submissions of the parties, the court finds as follows.[1]

## I. Facts

On December 1, 1998, Tabbert filed the Complaint in this case in the Superior Court of Marion County, Indiana, Cause Number 49 D03 9812 CP 001700. Tabbert, a law firm based in Indianapolis, alleges that it was retained by Mr. Lanza and Ms. Lanza (collectively, "the Lanzas") to represent them in a criminal tax evasion case in the United States District Court for the Northern District of Indiana, *United States v. Joseph Lanza and Jayne Lanza*, Cause Number 2:96CR–001–JM. Tabbert further alleges that the Lanzas owe Tabbert $186,565.28 for services rendered and costs advanced by Tabbert.

Tabbert served, via certified mail, copies of the Summons on the Lanzas at their California residence. (Mot. for Remand,

Ex. 1.) The certified mail receipts indicate that the copies of the Summons sent by Tabbert were received by the Lanzas on December 4, 1998. (*Id.*)

On December 5, 1998, Mr. Lanza sent a letter to the Marion Superior Court stating: "On December 4, 1998, I received the enclosed summons. However, I did not receive a copy of a complaint, making it impossible for myself or my bride to answer." (Mot. for Remand, Ex. 2.)

On December 2, 1998, the Clerk of the Marion Superior Court (by a Deputy Clerk) signed a "Certificate of Mailing" certifying that the Summonses and copies of the Complaint were sent, via certified mail, to the Lanzas at their California residence. (Mot. for Remand, Ex. 3.) The certified mail receipts indicate that the Summonses and copies of the Complaint sent by the Clerk were delivered on December 7, 1998. On December 10, 1998, a Deputy Clerk of the Marion Superior Court signed a "Return on Service by Mail" for each Defendant, certifying that "the attached return receipt was received by me showing that the Summons and a copy of the complaint mailed to defendant was accepted by the defendant on December 10, 1998."

According to an Affidavit from Ms. Lanza, she received Summonses on both December 4, 1998 and December 7, 1998. (Aff. of Jayne Lanza ¶¶ 2, 6.) However, Ms. Lanza denies that there was a copy of the Complaint attached to the Summons that she received from the Clerk on December 7, 1998. (*Id.* ¶ 6.)

On December 29, 1998, the Lanzas filed a motion for enlargement of time to answer the Complaint. On January 6, 1999, an order enlarging the time to answer to January 28, 1999 was entered. (Mot. for Remand, Ex. 5.)

---

1. This court was recently notified that Mr. Lanza filed bankruptcy in the Central District of California. An automatic stay of this proceeding, as to Mr. Lanza only, results from the filing of this bankruptcy, pursuant to 11 U.S.C. § 362. Therefore, while the court refers to Mr. Lanza and the to Lanzas collec-

tively in this Entry, the actual rulings contained herein only apply to the case against Ms. Lanza. An "Order of Dismissal As to Defendant Joseph Lanza Only", precipitated by Mr. Lanza's filing of bankruptcy, will be issued as a document separate from this Entry.

On January 29, 1999, the Lanzas again moved for an enlargement of time to answer the Complaint. On February 1, 1999, the time to answer was enlarged to February 28, 1999. (*Id.*)

On March 2, 1999, the Lanzas again moved for an enlargement of time. On March 3, 1999, the time to answer was enlarged to March 31, 1999. (*Id.*)

On April 1, 1999, a motion for default judgment was filed by Tabbert. On April 5, 1999, the Marion Superior Court granted Tabbert default judgment in the amount of $186,565.28 plus interest. (*Id.*)

Also on April 5, 1999, after the Marion Superior Court Clerk's office had closed, the Lanza's faxed a motion for enlargement of time to the Clerk. (Aff. of Jayne Lanza ¶ 16.)

On April 6, 1999, the Lanza's attorney (who had been retained on April 5, 1999) filed a Notice of Removal in this court, alleging diversity jurisdiction. (*Id.* ¶¶ 17–18.)

## II. Discussion

Tabbert moves for remand on the grounds that the removal was untimely under 28 U.S.C. § 1446(b), which provides:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

■ The issue in this case is whether the Lanzas received proper service in early December 1998. If they did, then the thirty-day removal clock began to run at that time and the Lanzas' Notice of Removal, filed on April 6, 1999, would be untimely pursuant to Section 1446(b). However, if the attempts at service in De-

cember 1998 were ineffective, then the removal clock would still not have begun (because there have been no other attempts at service) and the Notice of Removal would be timely.

It is undisputed that on December 4, 1998, the Lanzas received the Summonses that were sent via certified mail from Tabbert. It is also undisputed that on December 7, 1998, the Lanzas received the Summonses that were sent via certified mail from the Clerk of the Marion Superior Court. There is a dispute as to whether copies of the Complaint were enclosed with the Summonses sent from the Clerk—Ms. Lanza says they were not, while the Clerk says they were. From these facts, the court must determine whether the Lanzas were validly served.

As this action was filed in an Indiana state court, the sufficiency of service is determined by Indiana law. Indiana Trial Rule 4.1 governs service on individuals, and provides in relevant part: "Service *may* be made upon an individual ... by ... sending a copy of the summons and complaint by ... certified mail ... to his residence ... with return receipt requested and returned showing receipt of the letter...." IND. T.R. 4.1(A)(1) (emphasis added). The Indiana Trial Rules also provide that: "No summons or the service thereof shall be set aside or be adjudged insufficient when either is reasonably calculated to inform the person to be served that an action has been instituted against him, the name of the court, and the time within which he is required to respond." IND. T.R. 4.15(F).

The Seventh Circuit has recognized that under Indiana law, the manner of service set forth in Trial Rule 4.1 is "discretionary and therefore serve[s] only to outline general guidelines for service of process." *See Swaim v. Moltan Co.*, 73 F.3d 711, 720 (7th Cir.1996). According to the Indiana Court of Appeals,

> Ind. Trial Rule[ ] 4.1 ... provide[s] that service *may be made* upon an individual.... In contrast, other rules provide that service *shall be made* upon certain

parties in a designated manner.... The discretionary nature of T.R. 4.1 ..., coupled with the provision in T.R. 4.15(F), ... is evidence that personal jurisdiction is acquired by any method of service of summons which comports with due process.

*Washington v. Allison*, 593 N.E.2d 1273, 1275 (Ind.Ct.App.1992) (emphasis in original) (citations omitted); *see also Swaim*, 73 F.3d at 720 (same); *Gourley v. L.Y.*, 657 N.E.2d 448, 450 (Ind.Ct.App.1995) ("[P]ersonal jurisdiction over a party will obtain by any method of service which comports with due process.") (citation omitted); *Glennar Mercury–Lincoln, Inc. v. Riley*, 167 Ind.App. 144, 338 N.E.2d 670, 675 (1975) ("[T]he test for sufficiency of service of process under TR. 4.15(F) (service is sufficient if 'reasonably calculated to inform ...') is identical to the 'elementary and fundamental requirement of due process ... notice reasonably calculated, under all the circumstances, to apprise ....'") (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). So in order to determine whether the Lanzas were validly served under Indiana law, the court must determine whether they were served "by any method of service of summons which comports with due process."

■ "The Due Process Clause of the Fourteenth Amendment requires that service of process be reasonably calculated both to apprise a party of the pendency of an action and to provide it with an opportunity to respond." *Swaim*, 73 F.3d at 720 (citing *Mullane*, 339 U.S. at 306, 70 S.Ct. 652). "Indiana has codified this [due process] requirement" in Indiana Trial Rule 4.15(F). *Id.; see also Glennar Mercury–Lincoln*, 338 N.E.2d at 675 (same). "Service of process that is reasonably calculated to inform, consistent with the letter of Trial Rule 4.15(F), is sufficient even if it fails to actually inform the party to which it is directed." *Id.* at 721 (citing *Buck v.*

*P.J.T.*, 182 Ind.App. 71, 394 N.E.2d 935, 936 (1979)).

While the court notes that the certifications from the Marion Superior Court Clerk constitute very credible evidence (from a disinterested source) that copies of the Complaint were served on the Lanzas with the Summonses, the court will assume for the purposes of argument that the Lanzas were only served with the Summonses. The issue then, becomes whether service of the Summons satisfies the requirements of Trial Rule 4.15(F), which provides: "No summons or the service thereof shall be set aside or be adjudged insufficient when either is reasonably calculated to inform the person to be served that an action has been instituted against him, the name of the court, and the time within which he is required to respond." The Summonses in this case state that an action has been instituted against the Lanzas, state the name of the court, and state the time within which the Lanzas were required to respond. (Pl.'s Resp. to Defs.' Mot. to Quash, Ex. 5 (Ms. Lanza's Summons); Notice of Removal, Exs. [N] (Mr. Lanza's Summons).) The presentation of the information on the Summonses, as well as their manner of delivery (via certified mail), indicate that the Summonses were reasonably calculated to inform the Lanzas of these facts. Moreover, the certifications from the Clerk of Court that copies of the Complaint were sent with the Summonses constituted evidence of complete service on which Tabbert could reasonably rely. *Cf. Swaim*, 73 F.3d at 721 ("Service of process that is reasonably calculated to inform, consistent with the letter of Trial Rule 4.15(F), is sufficient even if it fails to actually inform the party to which it is directed.") (citation omitted). Therefore, pursuant to Indiana law, under the circumstances of this case, service of the Summonses alone was sufficient for effective service of process.[2]

---

**2.** Although neither party mentions *Overhauser v. Fowler*, 549 N.E.2d 71 (Ind.Ct.App.1990), the court finds that its holding is inapplicable

to this case. In *Overhauser*, plaintiff Fowler's attempted service on defendant Overhauser via certified mail was returned unaccepted.

■ Taking a step back and looking at the language of 28 U.S.C. § 1446(b), it is apparent that due process does not require states to mandate that a copy of the complaint be served on the defendant if, as in this case, the complaint has been filed in court: "The notice of removal of a civil action or proceeding shall be filed ... within thirty days after the service of summons upon the defendant if such initial

However, defendant Overhauser was later served with a summons and cross-complaint by a co-defendant in the same case. The court held that Overhauser's receipt of a summons (which contained the information that Overhauser had been named as a defendant in a suit brought by Fowler) from the co-defendant was insufficient to constitute valid service of process in the main action. The court first stated the rule that "actual knowledge of the suit does not satisfy due process or give the court in personam jurisdiction." *Id.* at 73 (quotation omitted). The court then reasoned that Indiana Trial Rule 4.15(F) did not apply because that rule "does 'not cure service of process when there has been no service on a party.' Since [plaintiff] Fowler never executed service on Overhauser, T.R. 4.15(F) does not apply." *Overhauser*, 549 N.E.2d at 73 (quoting *Roberts v. Watson*, 172 Ind.App. 108, 359 N.E.2d 615, 620 (1977)).

In other words, in *Overhauser*, the defendant received (at least some of) the information that would have been written on plaintiff's summons from a source other than the plaintiff (or the clerk of court on the plaintiff's behest). Finding that Trial Rule 4.15(F) does not apply in such a case is perfectly in keeping with the general rule that " 'actual knowledge of the suit does not satisfy due process or give the court in personam jurisdiction.' " *Id.* (quoting *Glennar Mercury–Lincoln, Inc. v. Riley*, 167 Ind.App. 144, 338 N.E.2d 670, 675 (1975)). Indeed, had the *Overhauser* court found that receipt of the information on the summons from some source other than plaintiff (or the clerk of court on plaintiff's behest) would have amounted to a holding that Trial Rule 4.15(F) allows service *beyond* the limits proscribed by due process. Therefore, the holding of *Overhauser* is consistent with the rule stated in other Indiana cases that under the Indiana service rules, "personal jurisdiction over a party will obtain by any method of service which comports with due process." *Gourley v. L.Y.*, 657 N.E.2d 448, 450 (Ind.Ct. App.1995) (citation omitted). The *Overhauser* court's citation to *Glennar Mercury–Lincoln*, 338 N.E.2d at 675, lends support to this view. *See Glennar Mercury–Lincoln*, 338 N.E.2d at 675 ("[T]he test for sufficiency of service of process under TR. 4.15(F) (service is sufficient if 'reasonably calculated to inform ...') is identical to the 'elementary and fundamental requirement of due process ... notice reasonably calculated, under all the circum-

stances, to apprise ....' ") (quoting *Mullane*, 339 U.S. at 314, 70 S.Ct. 652).

By contrast to *Overhauser*, in this case, Tabbert did execute service upon the Lanzas. The Lanzas' received the Summonses directly from Tabbert as well as from the Clerk of Court on Tabbert's behest. Therefore, this is not a case in which the Lanzas acquired actual knowledge of information contained on the Summons from some source other than Tabbert's attempts at service. Therefore, in this case, Trial Rule 4.15(F) applies.

*Overhauser* also cites Indiana Trial Rule 4(E), which provides that "[t]he summons and complaint *shall* be served together unless otherwise ordered by the court." IND. T.R. 4(E) (emphasis added). This language would indicate, as does some language in *Overhauser*, that the Complaint *must* be served with the Summons for effective service of process. However, as noted in the previous paragraphs, *Overhauser* expressly found Trail Rule 4.15(F) inapplicable for a reason ("[s]ince [plaintiff] never executed service on [defendant]") that does not exist in this case (Tabbert did execute service upon the Lanzas). On the other hand, *Washington v. Allison*, 593 N.E.2d 1273 (Ind.Ct.App.1992) (discussed above), expressly took Trial Rule 4.15(F) into account when it held that "personal jurisdiction is acquired by any method of service of summons which comports with due process." *Id.* at 1275; *see also Swaim*, 73 F.3d at 720 (relying upon this language in *Washington* in interpreting Indiana law); *Gourley*, 657 N.E.2d at 450 (same). Therefore, in the context of the facts of this case, to the extent there is any conflict between *Overhauser* and *Washington*, the court finds *Washington* more persuasive. *See also Glennar Mercury–Lincoln*, 338 N.E.2d at 675 ("Literal compliance with Trial Rules 4 through 4.17 means effective service of process. TR. 4.15(F) establishes that substantial compliance with the rules can also be effective if the summons and service thereof are 'reasonably calculated to inform ....' Because the literal requirements of Rules 4 through 4.13 represent the ideal as to the mechanics of preparing the summons ... and the details of how each mode of service should be effectuated, the reasonableness of the service actually employed should be measured by the degree of compliance with those specifics.") (quotation and citation omitted).

pleading [i.e., the complaint] has then been filed in court and is not required to be served on the defendant. . . ." The United States Supreme Court recently confirmed Section 1446's language:

> [I]f the defendant is served with the summons and the complaint is filed in court, but under local rules, service of the complaint is not required, the removal period runs from the date the complaint is made available through filing. . . . [But] if the complaint is filed in court prior to any service, the removal period runs from the service of the summons.

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.,* 526 U.S. 344, 354, 119 S.Ct. 1322, 143 L.Ed.2d 448 (1999) (citation omitted).

In this case, the Complaint was filed prior to service, and, as discussed above, under Indiana's Trial Rules, service of the Complaint was not required based upon the facts of this case. Therefore, "the removal period [ran] from the service of the summons." It is undisputed that the Summonses were served on the Lanzas on both December 4, 1998 and December 7, 1998. The thirty-day removal period began at that time and ended in early January 1999. Therefore, the Lanzas' Notice of Removal, filed on April 6, 1999, was untimely.

■ The Lanzas also argue that the Indiana court lacked personal jurisdiction over them because they do not fall within the reach of Indiana's long-arm statute. *See* IND. T.R. 4.4. Indiana's long-arm statute has been construed to extend the personal jurisdiction of a federal court sitting in Indiana to the outer limits of due process. *See Reed v. International Union of UAW,* 945 F.2d 198, 201 (7th Cir.1991); *Freemond v. Somma,* 611 N.E.2d 684, 688 (Ind.Ct.App.1993). "Thus, a two-part inquiry of whether Indiana's long-arm statute confers the exercise of personal jurisdiction in a particular case and whether that allowance accords with due process is unnecessary; rather, the proper and economical inquiry is a single search for the outer limits of what due process permits." *L.H. Carbide Corp. v. Piece Maker Co.,* 852 F.Supp. 1425, 1432 (N.D.Ind.1994) (quotations and citations omitted).

The Supreme Court of the United States has interpreted due process as requiring "minimum contacts" between the defendant and the forum state before the court may exercise personal jurisdiction over the defendant. *See International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The defendant's contacts with the forum state must be such that the exercise of personal jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Id.* at 316, 66 S.Ct. 154. The critical inquiry is whether the defendant's conduct and connection with the forum state are such that the defendant should reasonably anticipate being hailed into the distant forum court. *See World–Wide Volkswagen v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

■ Indiana courts may exercise either general or specific personal jurisdiction over nonresident defendants:

> Specific jurisdiction refers to 'jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum.' General jurisdiction is proper when a defendant has 'continuous and systematic general business contacts' with the forum. This type of jurisdiction allows a defendant to be amenable to suit within that forum regardless of the subject matter of the suit.

*Steel Warehouse of Wis., Inc. v. Leach,* 154 F.3d 712, 714 (7th Cir.1998) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)).

In this case, the suit arises from legal fees amassed while Tabbert represented the Lanzas in a criminal case in the United States District Court for the Northern District of Indiana. The Lanzas called Tabbert in Indiana and asked the firm to

represent them. There were other calls and correspondence from the Lanzas (in California) to Tabbert (in Indiana).[3] Moreover, the Lanzas appeared with lawyers from Tabbert at hearings in Indiana. And the culmination of Tabbert's representation of the Lanzas was the guilty plea entered by each Lanza on July 29, 1998 in Indiana.[4] This suit for Tabbert's attorney fees "arises out of" and is "related to" these contacts. *Steel Warehouse*, 154 F.3d at 714 ("To satisfy due process, specific jurisdiction requires that the suit 'arise out of' or 'be related to' these minimum contacts with the forum state.") (quoting *Helicopteros*, 466 U.S. at 414 n. 8, 104 S.Ct. 1868). These contacts are more than the "minimum contacts" necessary to confer to Indiana courts specific jurisdiction over the Lanzas in this matter.

In light of the court's findings in this Entry, the court declines to address Tabbert's alternative argument that remand is warranted because no case or controversy exists (because final judgment arguably had been entered before removal). Consequently, the court also declines to address the Lanzas' rebuttal arguments that the default judgment was improvidently granted too soon (because of Trial Rules 55(B) and 6(E)) or that the judgment was not officially entered until after the removal to this court. The Lanzas (or just Ms. Lanza if Mr. Lanza's bankruptcy stay is still in effect) may raise these issues in state court.

### III. Conclusion

Pursuant to Indiana law, Tabbert effectuated valid service of process on the Lanza's on December 7, 1998. The thirty-day removal period began on that date. The Lanza's Notice of Removal, filed on April 6, 1999, was untimely. Therefore, the Mo-

---

3. These allegations from Tabbert were not controverted by the Lanzas.

4. Tabbert attaches to its Reply Brief copies of the Judgments reflecting the acceptance of each Lanza's guilty plea and their sentencing. The court notes that while neither Judgment actually states that Mr. Lanza or Ms. Lanza

tion for Remand is **GRANTED**. This case, as against Ms. Lanza only, is hereby **REMANDED** to the Marion County Superior Court, under Cause Number 49 D03 9812 CP 001700.

The Motion to Dismiss; Motion to Quash Service, and to Strike Judgment; and, Motion to Vacate Judgment, are all **DENIED** as moot.

Tabbert's request for attorney fees pursuant to 28 U.S.C. § 1447(c) is **DENIED**. The Lanzas' arguments were reasonable.

The pre-trial conference scheduled for April 6, 2000 is **VACATED**.

was present in the Indiana court (although both indicate that Tabbert attorneys were representing the Lanzas at the time), the court takes judicial notice of the fact that a defendant must appear in person to enter a guilty plea and be sentenced—federal district courts do not accept guilty pleas and impose sentences by telephone.